No. 66,255

STATE OF KANSAS, *Appellee,* v. DENNIS L. SANFORD, *Appellant.*

(830 P.2d 14)

Opinion filed April 10, 1992.

*Lucille Marino*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the brief for appellant.

*M. Jennifer Brunetti*, assistant district attorney, argued the cause, and *Gene M. Olander*, district attorney, and *Robert T. Stephan*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: The primary issue in this appeal relates to the sufficiency of the count in the information charging Dennis L. Sanford with aggravated kidnapping. If the information was not sufficient, the trial court had no jurisdiction over Sanford on the aggravated kidnapping charge.

Sanford filed a motion for arrest of judgment under K.S.A. 22-3502 after trial, challenging the information and jurisdiction. The motion was denied.

Additional issues relate to the trial court's refusal to: (1) suppress certain exhibits taken from Sanford's home and from an attorney representing Sanford in other matters; and (2) permit defense counsel to comment to the jury concerning the victim's bruises as she stepped down from the witness stand.

Sanford was charged, in separate counts, with aggravated kidnapping, K.S.A. 21-3421; attempted aggravated criminal sodomy, K.S.A. 1991 Supp. 21-3301, K.S.A. 21-3506; and sexual battery, K.S.A. 21-3517. He was convicted of the lesser offense of kidnapping, K.S.A. 21-3420, and on the sodomy and sexual battery counts.

We apply the rationale of State v. Hall, 246 Kan. 728, 793 P.2d 737 (1990), and reverse on the kidnapping charge; the amended information charging aggravated kidnapping was defective. We find no error in the trial court's rulings in admitting the exhibits and in prohibiting Sanford from commenting upon the victim's bruises.

The convictions of attempted aggravated criminal sodomy and of sexual battery are affirmed.

## Facts

Sanford's sister testified that she and her brother owned and lived together in a house in Topeka, which they were in the process of selling. They had discussed contacting real estate agents. Sanford made the contacts because his sister worked and had no time to do so.

The victim, S.S., a real estate agent, testified that she first met Sanford on a Sunday, having received a call earlier that day regarding the potential listing of his home. S.S. and her husband went to the residence and talked with Sanford for approximately 45 minutes. Learning that Sanford's only income was a social security check, S.S. determined that she needed to talk with Sanford's sister regarding the sister's financial circumstances. Later that evening, S.S. spoke to Sanford on the telephone and arranged to return to meet his sister the following day.

When S.S. arrived at the residence on Monday, the sister was not there. After waiting approximately 30 minutes, S.S. left. S.S. received a message to call Sanford later, and they set up an appointment for 10:00 a.m. the following day. S.S. stated that she never attempted to contact Sanford's sister.

S.S., who had written a sales contract on only one house before, was eager to complete Sanford's sale and skipped the agency's obligatory sales meeting and tour of homes in order to keep the appointment with Sanford. When she arrived, she was told that

Sanford's sister had gone for cigarettes. Feeling comfortable, S.S. helped herself to coffee as she and Sanford discussed financial matters. S.S. stated that Sanford did not prevent her from leaving. Sanford wanted to look at houses for sale in the area to which he and his sister were hoping to move, so S.S. retrieved her briefcase and listing book from her car. They looked through the book for 10 to 15 minutes, S.S. sitting on the couch and Sanford sitting in a chair across the room. Sanford eventually sat on the arm of the couch in order to see the book. When he put his arm on the back of the couch, his fingertips brushed S.S.'s shoulder and she told him to "back off," that she was trying to help him find a house.

S.S. testified that Sanford then pushed her over onto the couch, placed his hand over her mouth, and told her they were going to have fun. At trial she stated she tried to bite his fingers but could not because his hand was clasped too tightly. She had previously reported that she could not bite him because he kept moving his fingers. S.S. stated she tried to talk Sanford into letting her go, but that he told her to shut up and insisted that they were going to have fun. Upon his demand, S.S. removed her blouse, and then her bra. She stated that Sanford was grasping and pulling on her breasts. S.S. ran to the front door before being pulled back and hurled to the couch.

According to S.S., Sanford then produced three pieces of yellow paper which looked like facsimiles of legal forms and told her to sign them. Refusing at first, S.S. said she signed and dated them after Sanford threatened to kill her. The three papers, as well as copies, were entered into evidence over a defense objection. The yellow paper documents were titled "Contract," "Affidavit," and "Advice of Rights."

Although S.S. could not remember the occurrence sequence, she stated she gave Sanford her husband's telephone number, telling Sanford she had another appointment. Sanford dialed the number four times; however, it was busy each time.

According to S.S., Sanford unzipped his pants and pulled out his penis, telling her to put it in her mouth. She replied that the act would make her vomit. She also refused his request that she remove her skirt, claiming she was menstruating. She stated that Sanford then placed her hands on his penis and forced her

to masturbate him, assisting her with his hands. She licked his penis three times when threatened and stated that Sanford then ejaculated onto her hand and skirt. Sanford cleaned himself with a washcloth and offered it to her, leading her to the kitchen sink where she dabbed at her skirt with it. Sanford kissed S.S. in the kitchen, and S.S. promised Sanford she would go straight home.

S.S. returned to the living room and put on her blouse. She was permitted to look briefly at the papers she had signed earlier. One appeared to be a statement that she and Sanford were having an affair and that she would not tell the police or her husband. Another stated that she would be responsible for all his household expenses and bills. S.S. promised Sanford she would return the next day to continue the affair. She gathered her belongings and left the residence. S.S. drove to her husband's office, and the police were called.

S.S. was interviewed and taken to Stormont-Vail hospital where a partial rape kit was completed. Photographs were taken of a bruise on her arm and scratches on her hand. The next day she returned to the police station and photographs of additional bruises on her ankle and upper arm were taken. She claimed she received the bruises at Sanford's but had not reported them the day before.

A forensics examiner with the Kansas Bureau of Investigation (KBI) testified concerning tests conducted for the presence of seminal fluid. Seminal fluid was found on S.S.'s blouse and skirt, but none was found on defendant's couch cushions or washcloth, or on S.S.'s bra or oral swabs from her rape kit. The KBI was able to conclude that Sanford was a possible donor.

### The Amended Information—Aggravated Kidnapping

We will set out the developmental steps in the formation of the charge of aggravated kidnapping.

(1) The original complaint filed July 26, 1990, charged Sanford with simple kidnapping, committed with the intent to inflict bodily injury, or to terrorize and to facilitate flight or the commission of a crime.

(2) The State, at the preliminary hearing on August 16, 1990, before testimony was taken, moved to amend the complaint to

charge aggravated kidnapping. The State indicated that following the hearing it would amend by "written amended complaint."

(3) The trial court, at the preliminary hearing, sought clarification. The State asserted that the amendment would be that, "[Sanford] confined the defendant [*sic*] by force, threat or deception and it was done with the intent to facilitate commission of a crime."

At this point, defense counsel opposed the amendment and noted that the State's recitation of the charge was faulty and that a charge of aggravated kidnapping had not been made. The infliction of bodily harm was not alleged as required by K.S.A. 21-3421 for aggravated kidnapping.

(4) The amendment from kidnapping to aggravated kidnapping was permitted by the trial court.

(5) The State filed an amended written information on August 17, 1990. The written information failed to allege an essential element of the crime of kidnapping; the intent for which the taking or confinement was committed. The amended charge stated:

"Count 3
"AGGRAVATED KIDNAPPING K.S.A. 21-3421, pen. section 21-4501(a)

"On or about the 24th day of July, 1990 in the County of Shawnee and State of Kansas, DENNIS L. SANFORD, did then and there unlawfully, feloniously and willfully confine another, to-wit: [S.S.], by force or threat, with the intent to hold the said [S.S.], and did inflict bodily harm upon the person of the said [S.S.] contrary to the form of the statutes in such case made and provided and against the peace and dignity of the State of Kansas.

"OR IN THE ALTERNATIVE

"Count 3
"AGGRAVATED KIDNAPPING K.S.A. 21-3421, pen. section 21-4501(a)

"On or about the 24th day of July, 1990 in the County of Shawnee and State of Kansas, DENNIS L. SANFORD, did then and there unlawfully, feloniously and willfully confine another, to-wit: [S.S.], by deception, with the intent to hold the said [S.S.], and did inflict bodily harm upon the person of the said [S.S.] contrary to the form of the statutes in such case made and provided and against the peace and dignity of the State of Kansas."

(6) K.S.A. 21-3420 states:

"Kidnapping is the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person:

"(a) For ransom, or as a shield or hostage; or

"(b) To facilitate flight or the commission of any crime; or

"(c) To inflict bodily injury or to terrorize the victim or another; or

"(d) To interfere with the performance of any governmental or political function.

"Kidnapping is a class B felony."

The amended charge omitted any expression of the elements (a), (b), (c), or (d) of K.S.A. 21-3420.

(7) At the close of the case in chief, the State elected to proceed upon the alternative charge of aggravated kidnapping by deception.

(8) The jury was instructed on aggravated kidnapping and simple kidnapping based upon the theory that the confinement was by fraud or deception and was done with the intent to inflict bodily injury on the victim.

(9) The aggravated kidnapping instruction stated:

"The defendant is charged with the crime of Aggravated Kidnapping. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. That the defendant confined [S.S.] by fraud or deception;

"2. That it was done with intent to hold such person to inflict bodily injury to the victim;

"3. That bodily harm was inflicted upon [S.S.];

"4. That this act occurred on or about the 24th day of July, 1990, in Shawnee County, Kansas."

(10) The State argued at the post-trial hearing on Sanford's motion for arrest of judgment (the motion alleged that an essential element of the offense was omitted) that Sanford had notice that the specific intent being alleged was the "intent to hold [S.S.] to facilitate the commission of the crime."

(11) The jury instructions did not mention facilitation of a crime. The jury was instructed that the intent to hold the victim was for the purpose of inflicting bodily injury.

### The Ruling of the Trial Court

The trial court denied Sanford's motion for arrest of judgment, reasoning that the oral amendment "was effective to cure any defect that might have been existing herein." The trial court stated:

"Throughout the entire proceedings herein, although the language was somewhat inarticulate, the manifest objective of the State was to charge the

Defendant of kidnapping, that is to hold the victim [S.S.] with intent to inflict bodily harm or to facilitate the commission of a crime. The State was required to, and did elect the intent to inflict bodily injury alternative at the time of instruction to the jury. It was patently clear and obvious to the Defendant and Defense Counsel throughout the entire proceedings, that the intent charged was as stated above. There can be no confusing, misunderstanding, or prejudice to the Defendant as a result of the fact that the State did not specify the intent with precision in the information."

### The State's Position

The State admits that the information did not specify which of the four enumerated options of K.S.A. 21-3420 the State relied on. The State reasons that the original complaint charging kidnapping was sufficient. The original complaint charged kidnapping "with the intent to hold . . . inflict bodily injury or to terrorize [S.S.] to facilitate flight or the commission of a crime." See K.S.A. 21-3420(b) and (c). The State reasons that, although the written information filed the day following the State's oral amendment did not contain the language of K.S.A. 21-3420(a), (b), (c), or (d), it is clear from the record that the trial court, as well as Sanford, relied on the oral amendments of the State. According to the State, jurisdiction was solidified by the oral amendment "along with the complaint and information."

### Sanford's Position

Sanford relies on *State v. Hall,* 246 Kan. 728, 793 P.2d 737 (1990). In *Hall,* we held that the proper procedure to follow in asserting a contention that either an information does not charge a crime, or that the trial court was without jurisdiction of the crime charged, is to file a motion for arrest of judgment under K.S.A. 22-3502. Sanford did so. Our signal in *Hall* set out a pre-*Hall* standard and a post-*Hall* standard. 246 Kan. at 764-65. Because Sanford filed the motion for arrest of judgment, the trial court was to test the sufficiency of the information by the pre-*Hall* standard.

The original count 3, kidnapping, filed as a written information stated:

"Count 3

"KIDNAPPING Sec. 21-3420, K.S.A.; Penalty Sec. 21-4501(b)

"On or about the 24th day of July, 1990 in the County of Shawnee and State of Kansas, DENNIS L. SANFORD, did then and there unlawfully,

feloniously and willfully *take* or confine another, to-wit: [S.S.], by force, threat or deception, with the intent to hold the said [*sic*] *inflict bodily injury or terrorize [S.S.] to facilitate flight or the commission of a crime,* contrary to the form of the statutes in such case made and provided and against the peace and dignity of the State of Kansas." (Emphasis added).

The italicized portion of count 3 was omitted from the written information filed charging Sanford with aggravated kidnapping.

K.S.A. 21-3420, the kidnapping statute, provides four types of intent, an allegation of one being essential to the commission of the crime. The amended information fails to allege in the count of aggravated kidnapping any intent for which the holding was committed and is fatally defective for failing to allege every essential element of kidnapping. The oral amendment to the original charge of kidnapping was followed by the filing of a written information. The written amended information controls over the earlier oral amendment. The oral amendment of aggravated kidnapping at the preliminary hearing, elevating the charge from simple kidnapping, is insufficient as the oral amendment did not allege that bodily harm was inflicted, an element of K.S.A. 21-3421, aggravated kidnapping. Sanford asserts that the motion for arrest of judgment should have been granted based on the trial court's lack of jurisdiction. We agree.

## Jurisdiction

The trial court had no jurisdiction over the charge of aggravated kidnapping. The amended information was insufficient. It did not contain the elements of the crime of aggravated kidnapping. We follow the teaching of *Hall.* In *Hall* we stated:

"We urge the defense bar to utilize this K.S.A. 22-3502 arrest of judgment defense tool. If the court did not have jurisdiction, or if the information did not charge a crime for which the defendant was convicted, the defendant is entitled to a determination of that condition at the trial court level.

. . . .

"A motion for arrest of judgment is the proper procedure for a defendant who wishes to challenge the sufficiency of the information after trial because of either a claim that it did not charge a crime or that the court was without jurisdiction of the crime charged. When such a motion is timely filed, the trial court, in reviewing the motion, shall test its merit by utilizing the rationale of our pre-*Hall* cases." 246 Kan. at 764.

Sanford timely filed his motion for arrest of judgment.

We now turn to the pre-*Hall* cases and apply the rationale of those cases to the case at bar.

In Kansas, all crimes are statutory and the elements necessary to constitute a crime must be gathered wholly from the statute. An information which omits one or more of the essential elements of the crimes it attempts to charge is jurisdictionally and fatally defective, and a conviction based on such an information must be reversed. See *State v. Jackson,* 239 Kan. 463, Syl. ¶ 4, 5, 721 P.2d 232 (1986).

We have held that the citation to the statute cannot substitute to supply a missing element of the charge. Incorporation by reference cannot be implied or inferred. It must be explicit. *Jackson,* 239 Kan. at 466. A proper instruction does not remedy the defect in the complaint. *State v. Howell & Taylor,* 226 Kan. 511, 513, 601 P.2d 1141 (1979).

In *Hall,* the failure of the complaint to allege that Hall took control of the cattle with the intent to *permanently* deprive· the owner of its possession rendered the complaint fatally defective. Hall's conviction of theft, under K.S.A. 21-3701, was reversed. 246 Kan. at 747. (A detailed analysis of our pre-*Hall* cases is set out at 246 Kan. at 758-59.)

Aggravated kidnapping requires an allegation that bodily harm was inflicted. *State v. Smith,* 245 Kan. 381, 396, 781 P.2d 666 (1989).

We have permitted oral amendments to an information (or complaint). Oral amendments must be detailed and specific and are to be memorialized. *State v. Browning,* 245 Kan. 26, 774 P.2d 935 (1989) (oral amendment from first-degree murder to second-degree murder, later journalized, ineffective because malice not alleged); *State v. Switzer,* 244 Kan. 449, 456, 769 P.2d 645 (1989) (detailed and specific oral amendment, though not memorialized by time of appeal, held effective with appellate order to amend the journal entry nunc pro tunc showing the corrected complaint); *State v. Nunn,* 244 Kan. 207, Syl. ¶ 18, 768 P.2d 268 (1989) (oral motion to amend sustained on the record before the verdict is rendered; amendment effective immediately, absent prejudice to the defendant, and not invalidated although prosecution does not memorialize the amendment by journal entry until after· trial).

The oral amendment to Sanford's original charge of simple kidnapping was followed by the new amended written information charging aggravated kidnapping. The written information controls over the earlier oral amendment; consequently, our holding in *Switzer* is not applicable to the instant fact situation.

In the case at bar, the oral amendment charging aggravated kidnapping was defective, and the subsequent written amendment to the count charging aggravated kidnapping was also defective. The trial court erred in failing to grant Sanford's motion for arrest of judgment. The conviction of kidnapping is set aside as void. The trial court had no jurisdiction over the charge of aggravated kidnapping.

### Admission of State's Exhibit

The warrant issued for the search of Sanford's residence authorized a search and seizure of the following items:

"1. Documents suspect made victim sign. (She signed three documents.)
"2. Wool white rug with blue or black pattern—on floor in front of couch.
"3. Brown tweed sofa or portion of sofa—reference seminal fluid.
"4. Royal blue shorts worn by suspect.
"5. White or grey t-shirt worn by suspect.
"6. Documents as to resident(s) or renter(s).
"7. Light blue wash cloth.
"8. The person of Dennis Sanford for blood, hair and saliva."

The search was successful. Initially, the officers found everything listed except item 1, the documents S.S. had signed. During the search a detective had occasion to thumb through a black notebook which contained yellow and white note paper. At the back of the notebook the detective observed white papers shoved down in the back pocket. The detective pulled the white papers out to examine them. The papers were three photocopies of the documents (item 1 of the search warrant) S.S. had reported signing. The detective made the statement to Sanford, "[A]nd you didn't know anything about these, did you?" Sanford responded by saying, "Thanks a lot for telling him, Nan." (Nan is Sanford's sister.)

At this juncture, the detective directed uniformed officers to arrest Sanford. While officers were placing handcuffs on Sanford, he indicated it was "no problem, his attorney had the originals," as he had taken them to the attorney.

The State, by court order, secured the original handwritten documents (three yellow sheets) from defendant's attorney and introduced the yellow sheets in evidence at trial. The search warrant issued by the trial court described, with particularity, the property to be searched and seized. Sanford has raised no issue as to the validity of the search warrant. Sanford contends that since one detective discovered nothing when he looked at the notebook, it was then off-limits to a second detective. Sanford's contention is not persuasive.

The search of Sanford's residence was directed in good faith toward the objects specified in the warrant. *State v. Bolen,* 205 Kan. 377, 469 P.2d 422 (1970). Sanford asserts that because the copies were white and not yellow in color, their seizure exceeded the scope of the lawful search. The State counters by noting that the search warrant issued does not describe the color of documents. The action of the second detective in looking through a notebook containing yellow and white paper in an attempt to discover the documents was reasonable. The photocopies of the documents seized by officers pursuant to a lawful search were admissible.

Sanford's statements made at the time of the search were suppressed because the trial court found their relevancy questionable and also a source for potential jury speculation.

At trial, defense counsel objected to the admission of the three yellow documents, arguing that they were a product of Sanford's statements which the trial court had previously suppressed. The trial court reaffirmed its previous ruling. The documents were not part of an impermissible search and seizure. The previous ruling on the suppression of Sanford's statements could not be extended to the documents.

Defense counsel renewed the objection to the yellow documents, as well as the white copies seized during the search of Sanford's house when they were submitted to the jury at trial. No testimony was presented as to how the yellow documents were obtained by the State.

The three original yellow documents contained the exact information contained in the white copies. The white copies were properly admitted. There was no error in admitting the yellow originals.

### The Physical Appearance of the Victim

Sanford asserts that the trial court abused its discretion in denying him the opportunity to exhibit bruises on S.S.'s leg to the jury.

The focus of this issue is the exchange which took place as S.S. was leaving the witness chair, having been called as a rebuttal witness by the State. It was as follows:

"[Defense counsel]: Your Honor, I have no questions. I would just like for the jury—you can step down, ma'am.

"THE COURT: Well, if you have no questions—
[Defense counsel]: I have no questions. You can step down.

"THE COURT: You can't tell the jury—

"[Defense counsel]: I would just like to point out for the jury the bruise that is on [S.S.'s] leg.

"[Assistant district attorney for State]: Judge, I think that's improper. I move to strike.

"[Defense counsel]: Let, let's do it this way. All right, Your Honor.

"THE COURT: I've already excused the witness. You may be excused.

"[Defense counsel]: And they can observe the bruises.

"[Assistant district attorney for State]: Judge, I move to strike Mr. Cerrillo's statement.

"THE COURT: Jury disregard.

"[Defense counsel]: The jury has seen what it saw.

"THE COURT: The jury will disregard the comments by counsel. They're inappropriate.
"[Assistant district attorney for State]: State has no further rebuttal, Your Honor.

No foundation was laid by Sanford's counsel for the alleged bruise markings located on S.S.'s person. There was no testimony as to the markings or their origin. Sanford's counsel is the only one who stated the markings were bruises. Defense counsel stated he had no questions for S.S. and did not attempt to call anyone who would have such knowledge regarding the victim's physical condition.

The foundation to admit physical evidence is determined by the trial judge, who must be satisfied as to relevance. *State v. Boone,* 220 Kan. 771, 556 P.2d 880 (1976). The applicable standard of review for abuse of discretion is that no reasonable person

would take the view adopted by the trial court. *State v. Wagner*, 248 Kan. 240, 242, 807 P.2d 139 (1991).

We find no abuse of discretion.

Sanford was sentenced to a term of 15 years to life for kidnapping, 5 years to 20 years for attempted aggravated criminal sodomy (these two sentences are to run consecutive with each other), and 1 year for sexual battery (to run concurrent with either of the other two sentences).

We affirm the convictions of attempted aggravated criminal sodomy and sexual battery. The kidnapping conviction is set aside as void. We remand to the trial court for further proceedings.