No. 102,558

STATE OF KANSAS, *Appellee,* v. JOSE A. PORTILLO, *Appellant.*
(274 P.3d 640)

Opinion filed April 27, 2012.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Sheryl L. Lidtke*, deputy district attorney, argued the cause, and *Robbin L. Wasson*, assistant district attorney, *Jerome Gorman*, district attorney, and *Steve Six*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Jose A. Portillo directly appeals his conviction for one count of rape of a child under age 14. At sentencing, recognizing that it had failed to properly charge Portillo with the off-grid version of the crime, the State filed a motion to amend the presentence investigation report (PSI) to indicate that Jessica's Law applied and that Portillo was subject to a mandatory minimum hard-25 life sentence. Ultimately, the district court found that the State's failure to charge Portillo with the off-grid offense version of the crime was mere clerical error and did not prejudice his defense. As a result, the district court held that Portillo had been convicted of an off-grid felony. Nevertheless, the district court departed from the mandatory minimum sentence and imposed a prison term of 240 months. Portillo appeals, claiming his conviction and sentence violate due process and that his conviction was not supported by sufficient evidence. We find sufficient evidence to support a conviction for the on-grid version of the crime but remand for resentencing.

## FACTUAL AND PROCEDURAL OVERVIEW

Portillo was accused of the forcible rape of D.B., the daughter of a woman with whom Portillo had been having an affair. In an initial interview with the police on the date of the incident, D.B. said that Portillo had come to the house as usual that morning but then had asked D.B. to go into her bedroom. She said that when they were inside the bedroom and Portillo had closed the door, he pulled down her pants, covered her mouth, pushed her onto the bed, pulled off his pants, got on top of D.B., and "tried to put his

thing in her." When asked whether Portillo had "put it in all the way," D.B. responded, "Yes, but not all the way in."

D.B.'s mother opened the bedroom door to discover Portillo on top of D.B. and D.B.'s underwear and pants below her knees. The mother scuffled with Portillo, before calling the police. After the police interviewed D.B., her mother took her to the hospital emergency room.

At the hospital, Dr. Hite performed a sexual assault and gynecological examination. The doctor testified to finding blood in the general area inside the labia majora, albeit she could not pinpoint the source of the blood except to rule out that it was coming from the vaginal canal or the rectum. The doctor could not see any tearing, lacerations, or scratches with her naked eye, but did notice a "duskiness in the posterior fourchette," which was consistent with bruising as a result of direct blunt trauma. The swabs collected from D.B. during the examination and from D.B.'s bedding all tested negative for Portillo's DNA.

D.B. was forensically interviewed at Sunflower House the day after the incident. Her recollection of events was consistent in most respects with her statements to the police the day before, except for her description of penetration. When asked what Portillo was doing while on top of her, D.B. said that he was "pushing back and forth" with his private part on top of her private part, which felt "weird." She said that Portillo tried to get his private part "inside [her] body but [she] kept on moving so he couldn't." At trial, D.B. testified that Portillo "put his private thing on [her] private thing," but not inside. When asked about her initial statement to law enforcement, D.B. said that she did not remember telling the officer that Portillo "got it partway in."

Portillo's theory of defense was that D.B.'s mother had fabricated the rape because she was mad at Portillo for refusing to commit to their relationship. At trial, the defense objected to the admission of the videotape of D.B.'s Sunflower House interview as cumulative, arguing that it constituted the "fourth hearsay telling of what [D.B.] has said." The trial court admitted the videotape as being probative of the victim's state of mind.

The jury was instructed on both rape and attempted rape. The jury found Portillo guilty on the rape charge.

The initial sentencing hearing was scheduled for March 11, 2009, albeit the transcript of that hearing is not in the record on appeal. According to a subsequent pleading, entitled "State's Motion to Amend Presentence Investigation Report," the State discovered at the initial sentencing hearing that the information had charged Portillo with severity level 1 rape, rather than the off-grid version. Apparently, the district court continued the initial sentencing hearing to allow the parties to brief the issue. Ultimately, the district court agreed with the State's argument that its charging of the on-grid version of the offense could be considered a clerical error and that the erroneous charging instrument had not prejudiced Portillo's defense in any way. Accordingly, the district court determined that it could sentence Portillo for the off-grid version of the crime.

Nevertheless, the district court advised the parties that it had decided *sua sponte* to impose a departure sentence. The aggravated term in the appropriate guidelines grid-box for the severity level 1 version of rape was 165 months. The district court told the parties that it was "looking at a number between 165 [months] and 25 years." After giving the parties an opportunity to be heard, the court ultimately imposed a sentence of 240 months.

On June 17, 2009, Portillo obtained leave to docket this appeal out of time. We have jurisdiction pursuant to K.S.A. 22-3601(b)(1).

Portillo's brief raises three issues: (1) The State's failure to charge and prove the defendant's age at trial, along with the district court's failure to instruct the jury on the element of defendant's age, violated Portillo's Sixth Amendment right to a jury trial when the district court imposed a sentence as if Portillo had been convicted of an off-grid offense; (2) the district court erred in permitting the admission of the Sunflower House interview videotape; and (3) the evidence was insufficient to support the penetration element of rape. We take the liberty of addressing the issues in reverse order.

SUFFICIENCY OF THE EVIDENCE OF PENETRATION

*Standard of Review*

To avoid any suggestion that we might be altering our standard of review, we will resist the temptation to paraphrase the familiar standard and will set forth a complete recitation:

" 'When sufficiency of evidence is challenged in a criminal case, our standard of review is whether, after review of all the evidence, examined in the light most favorable to the prosecution, we are convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt.' *State v. Prine*, 287 Kan. 713, 738, 200 P.3d 1 (2009) (citing *State v. Vasquez*, 287 Kan. 40, 59, 194 P.3d 563 [2008]; *State v. Morton*, 283 Kan. 464, 474, 153 P.3d 532 [2007]). 'In reviewing the sufficiency of the evidence, this court will not reweigh the evidence. It is the jury's function, not ours, to weigh the evidence and determine the credibility of witnesses.' *State v. Doyle*, 272 Kan. 1157, 1162-63, 38 P.3d 650 (2002) (citing *State v. Aikens*, 261 Kan. 346, 391-92, 932 P.2d 408 [1997])." *State v. Cosby*, 293 Kan. 121, 133-34, 262 P.3d 285 (2011).

*Analysis*

The version of rape for which Portillo was convicted simply required the State to prove that Portillo had "sexual intercourse with a child who is under 14 years of age." K.S.A. 21-3502(a)(2). "Sexual intercourse" is defined as "any penetration of the female sex organ by a finger, the male sex organ or any object. Any penetration, however slight, is sufficient to constitute sexual intercourse." K.S.A. 21-3501(1). This court has further refined the analysis of penetration by stating that "actual penetration of the vagina or rupturing of the hymen is not required; penetration of the vulva or labia is sufficient." *State v. Borthwick*, 255 Kan. 899, 914, 880 P.2d 1261 (1994).

Here, the evidence of penetration was conflicting. D.B.'s initial statement to the investigating officer suggested that Portillo achieved partial penetration. Her Sunflower House interview suggests that Portillo was moving his penis back and forth on the top of D.B.'s genitalia, and her trial testimony denied that penetration occurred because her movements had prevented it. The results of D.B.'s medical examination—blood on the inside of the labia and blunt force injury bruising—were consistent with penetration, but

not conclusive on that point. Portillo's DNA was not found on the vaginal swabs.

Naturally, Portillo focuses on D.B.'s trial testimony that penetration did not occur. He "contends that there must be irrefutable medical evidence of penetration or at least clear and convincing evidence that the victim does not comprehend the legal definition of sexual intercourse before a jury's rejection of the complaining [witness'] testimony denying penetration can be upheld on appeal." But, of course, that newly manufactured standard is nowhere close to our historical test for evidence sufficiency. The trial attorneys are free to argue which of the victim's statements are more credible, and it is the jury's function, not ours, to make the final assessment of credibility. Indeed, one might question whether the criminal defense bar would embrace a rule that would have us assessing the victim's testimony as always absolutely credible absent "irrefutable evidence" to the contrary.

Moreover, this court has previously addressed the circumstance of a victim's inconsistent statements regarding penetration. In *State v. Prine*, 287 Kan. 713, 200 P.3d 1 (2009), the victim told an investigating detective that the defendant placed his fingers on both the inside and outside of her vagina. But at trial, the victim repeatedly testified that the defendant only touched her on the outside. Based on this conflict, the defendant argued on appeal that there was insufficient evidence of penetration to support a rape conviction. 287 Kan. at 738. Despite the victim's denial at trial, this court upheld the sufficiency of the evidence to support the element of penetration, relying on the overall consistency of the victim's various statements detailing the alleged events and on other evidence that allowed for a "common-sense inference of penetration." 287 Kan. at 739-40.

As in *Prine*, D.B.'s various statements were consistent, except for the question of penetration. Even then, D.B.'s Sunflower House statement that Portillo was on top of her, pushing his penis back and forth, which she said felt weird, would support a common-sense inference that at least the labia were being penetrated. That inference was bolstered to some extent by the medical evidence of blood and bruising. Further, Dr. Hite opined that girls

D.B.'s age often do not know particular terms for genitalia so they generalize, *i.e.*, D.B. might not have known the difference between penetration of the labia and penetration of the vaginal canal.

On appeal, we are required to give due deference to the jury's factfinding. Without reweighing the evidence or reassessing the victim's credibility, and viewing the evidence in a light most favorable to the State, we are constrained to find that a rational jury could have found beyond a reasonable doubt that Portillo completed the crime of rape by effecting penile penetration. In other words, the evidence was sufficient to support the rape conviction.

### ADMISSION OF FORENSIC INTERVIEW VIDEOTAPE

Portillo also complains that the district court should not have permitted the State to admit the videotape of D.B.'s sexual abuse interview at the Sunflower House. He claims that the videotape was cumulative hearsay evidence that the trial court admitted for the irrelevant purpose of showing the victim's state of mind.

### *Standard of Review*

" ' "When a party challenges the admission or exclusion of evidence on appeal, the first inquiry is relevance. Once relevance is established, evidentiary rules governing admission and exclusion may be applied either as a matter of law or in the exercise of the district judge's discretion, depending on the contours of the rule in question. When the adequacy of the legal basis of a district judge's decision on admission or exclusion of evidence is questioned, an appellate court reviews the decision de novo." *State v. Walters*, 284 Kan. 1, Syl. ¶ 2, 159 P.3d 174 (2007).' *State v. Richmond*, 289 Kan. 419, 426, 212 P.3d 165 (2009).

"When the more discretionary aspects of an admissibility determination are challenged, 'the district court's decision will not be overturned on appeal if reasonable minds could disagree as to the court's decision.' *State v. Boggs*, 287 Kan. 298, 307, 197 P.3d 441 (2008)." *State v. McMullen*, 290 Kan. 1, 7, 221 P.3d 92 (2009).

### *Analysis*

At the time of Portillo's trial, K.S.A. 22-3433 was in effect and expressly authorized the admission of the recorded oral statement of a victim under the age of 13 under certain circumstances. Specifically, the statute provided:

"(a) In any criminal proceeding in which a child less than 13 years of age is alleged to be a victim of the crime, a recording of an oral statement of the child, made before the proceeding began is admissible in evidence if:

(1) The court determines that the time, content and circumstances of the statement provide sufficient indicia of reliability;

(2) no attorney for any party is present when the statement is made;

(3) the recording is both visual and aural and is recorded on film or videotape or by other electronic means;

(4) the recording equipment is capable of making an accurate recording, the operator of the equipment is competent and the recording is accurate and has not been altered;

(5) the statement is not made in response to questioning calculated to lead the child to make a particular statement or is clearly shown to be the child's statement and not made solely as a result of a leading or suggestive question;

(6) every voice on the recording is identified;

(7) the person conducting the interview of the child in the recording is present at the proceeding and is available to testify or be cross-examined by any party;

(8) each party to the proceeding is afforded an opportunity to view the recording before it is offered into evidence, and a copy of a written transcript is provided to the parties; and

(9) the child is available to testify.

"(b) If a recording is admitted in evidence under this section, any party to the proceeding may call the child to testify and be cross-examined, either in the courtroom or as provided by K.S.A. 22-3434 and amendments thereto." K.S.A. 22-3433.

Here, D.B. was age 11, and Portillo does not challenge any of the prerequisites set forth in the statute. Pointedly, the statute does not require the recorded oral statement to be noncumulative. To the contrary, under K.S.A. 22-3433(b), the child must testify in person if requested by either party. Accordingly, the statute contemplates that the recorded statement could well be cumulative to live testimony.

Further, the statute states that if the prerequisites are met, the recorded statement "*is* admissible in evidence." (Emphasis added.) K.S.A. 22-3433(a). That language suggests that the legislature has declared such statements to be relevant. Nevertheless, we will address Portillo's relevancy argument.

When the State was responding to the defense objection to the admission of the Sunflower House videotape, the prosecutor argued that the videotape was probative of D.B.'s "state of mind very

recent to the attack" and said the consistency of the statement countered the defense claim that D.B. was lying. The point the State appeared to be making was that the timing of the statement, *i.e.*, the day after the attack, would have memorialized the victim's fresh recollection of events, which in turn was consistent with her later statements. Unfortunately, when the court admitted the videotape, it parroted the prosecutor's poor word choice and said the evidence was probative of "the state of mind of the victim in this case."

Portillo pounces on the court's stated rationale, contending that the victim's state of mind was not a disputed material fact in this case. We agree with that assessment to the extent that "state of mind" refers to what D.B. was thinking during the alleged crime. However, to the extent the phrase refers to D.B.'s recollection of events during the Sunflower House interview, it does describe hotly contested matters. Portillo categorically denied that anything happened, directly contradicting the statements of both D.B. and her mother. D.B.'s statements during the Sunflower House interview, being consistent with other statements she made, together with D.B.'s demeanor during the interview, were probative on the issue of which version of events the jury would believe—the defendant's or the victim's.

Additionally, Portillo argues that, even if the interview videotape was relevant, its probative value was outweighed by its prejudicial effect. One might ruminate on just how prejudicial a cumulative statement can be. If the jury has already heard the statement, how earth-shattering could a repeat version be? Nevertheless, here we have part of the statement's probative value being the fact that it repeats the same version of events that is given at other times, including at trial. In other words, the statement's probativeness emanates from its cumulative nature. In short, the district court did not abuse its discretion in admitting the Sunflower House interview videotape.

## Off-Grid Sentencing for On-Grid Conviction

Although Portillo received a departure sentence, he contends that the district court erred in finding that the starting point was

the mandatory hard-25 life sentence under Jessica's Law, K.S.A. 21-4643. Instead, he believes that the district court should have departed downward from his grid-based presumptive sentence for a severity level 1 offense, which listed a mid-term sentence of 155 months. Portillo argues that the off-grid sentencing was precluded for three reasons: (1) The State did not include the element of defendant's age in the complaint; (2) the State did not introduce evidence of defendant's age during the jury trial; and (3) the district court did not instruct the jury on the element of the defendant's age. Although Portillo refers to a complaint, the applicable charging document in this case is an information, albeit the distinction does not affect our analysis.

*Standard of Review*

We will focus on the content of the charging document, or more accurately, the lack of content in the information. Recently, we suggested that a district court derives its jurisdiction to convict an accused through the charging document:

" 'The Sixth Amendment to the United States Constitution gives an accused the right to "be informed of the nature and cause of the accusation"; the Kansas Constitution Bill of Rights, § 10 mandates that "the accused shall be allowed . . . to demand the nature and cause of the accusation against him." Generally, if a complaint fails to include an essential element of a crime charged, it is "fatally defective, and the *trial court lacks jurisdiction to convict* the defendant of the alleged offense." ' " (Emphasis added.) *State v. Inkelaar*, 293 Kan. 414, 433-34, 264 P.3d 81 (2011) (quoting *State v. Gonzales*, 289 Kan. 351, 366, 212 P.3d 215 [2009]).

To the extent we are called upon to determine the existence of jurisdiction, we are presented with a question of law subject to unlimited review. *State v. Ellmaker*, 289 Kan. 1132, 1147, 221 P.3d 1105 (2009), *cert. denied* 130 S. Ct. 3410 (2010).

*Analysis*

K.S.A. 21-3502 is the statute that defines rape, thereby setting forth the essential elements of the crime. Portillo was charged under the subsection (a)(2) definition of rape, *i.e.*, "sexual intercourse with a child who is under 14 years of age." The statute also states

that "rape as described in subsection (a)(1) or (2) is a severity level 1, person felony," except that "[r]ape as described in subsection (a)(2), when the offender is 18 years of age or older, is an off-grid person felony." K.S.A. 21-3502(c). In other words, the statute defining rape makes a defendant's age—18 years or older—an element of the off-grid version of the crime. See *State v. Reyna*, 290 Kan. 666, 676, 234 P.3d 761, *cert. denied* 131 S. Ct. 532 (2010) ("the defendant's age at the time of the offense is an element of the crime if the State seeks to convict the defendant of the more serious, off-grid enhanced offense"). Likewise, Jessica's Law's mandatory minimum sentencing is only applicable to "a defendant who is 18 years of age or older." K.S.A. 21-4643(a)(1).

Since the enactment of Jessica's Law, K.S.A. 21-4643, a number of defendants sentenced under that provision have challenged their charging documents based on the omission of defendant's age as an element of the crime. See, *e.g.*, *Inkelaar*, 293 Kan. at 433-35; *State v. Huerta-Alvarez*, 291 Kan. 247, 254-56, 243 P.3d 326 (2010); *State v. Kemble*, 291 Kan. 109, 125-30, 238 P.3d 251 (2010); *Reyna*, 290 Kan. at 674-76; *State v. Gonzales*, 289 Kan. 351, 365-69, 212 P.3d 215 (2009); *State v. Gracey*, 288 Kan. 252, 254-57, 200 P.3d 1275 (2009). In each of those cases, this court examined the entire charging instrument to locate some indicia of defendant's age or an indication that the State intended to charge the off-grid version of the crime. See *Inkelaar*, 293 Kan. at 433-34; *Huerta-Alvarez*, 291 Kan. at 254-55 (all three complaints contained defendant's year of birth in the caption and alleged that at least one of the counts was an off-grid offense); *Reyna*, 290 Kan. at 678 (defendant's year of birth in caption and stated charges were for off-grid felonies); *Gonzales*, 289 Kan. at 369 (listed date of birth and listed crime as off-grid); *Gracey*, 288 Kan. at 254-55 (same).

Portillo contends, the State concedes, and the record confirms that the information filed in this case specifically alleged that Portillo violated "K.S.A. 21-3502. (Rape, Severity Level 1, Person Felony)." There is no dispute that the information contains nothing anywhere on the document that would indicate Portillo's date of birth or age. Further, the information makes absolutely no reference to Jessica's Law, to the provisions of K.S.A. 21-4643, to an

off-grid classification or off-grid sentence, or to a mandatory minimum sentence of a hard-25 life sentence. In fact, the prosecutor informed the district court that the document was generated by a computer macro designed to charge the pre-Jessica's Law version of the offense.

The State argued below that the error was merely clerical, because the 2006 statutory provisions had clearly changed the rape that Portillo was alleged to have committed from a severity level 1 offense to an off-grid felony. The apparent suggestion was that Portillo knew his own age and should have known that the State really intended to charge the newly created off-grid version of the offense. What the State fails to appreciate is that we have said that a prosecutor has essentially unfettered discretion to ignore a fact that would support a prosecution for a more serious offense and, instead, can merely choose to prosecute the defendant for a lesser offense. See *State v. Sandberg*, 290 Kan. 980, 987, 235 P.3d 476 (2010) (quoting *State v. Campbell*, 279 Kan. 1, 14, 106 P.3d 1129 [2005]) ("nothing ' "foreclose[s] the prosecutor from deciding in a particular case that, notwithstanding the presence of one of the aggravated facts, the defendant will still be prosecuted for the lesser offense" ' "). Here, that would mean that the prosecutor had discretion to ignore the fact that Portillo was age 18 or older and prosecute him for the severity level 1 version of the offense, which the charging instrument purported to do. The State does not explain how Portillo should have known that the prosecutor here was not exercising his or her prosecutorial discretion to intentionally charge the on-grid version of rape.

If one were to take a straightforward approach, there is no way in which to view the charging document in this case as having informed Portillo that the nature and cause of the accusation against him was an off-grid felony, *i.e.*, the information would not pass constitutional muster. However, we have chosen to resolve these cases by utilizing a version of the defective complaint test created in *State v. Hall*, 246 Kan. 728, 764-65, 793 P.2d 737 (1990).

In *Hall*, the court took the "opportunity to express [its] concern relating to the number of appeals in Kansas in which the allegation of a defect in the information is raised for the first time on appeal."

246 Kan. at 753. The court noted that it appeared that prosecutors were engaging in "the practice of drawing an information without having at hand the current statute defining the offense." 246 Kan. at 753. Moreover, *Hall* related that the number of appeals claiming defects in informations "suggests that certain prosecutors need to exercise more care in the initial preparation of the charging document." 246 Kan. at 753. The *Hall* court then effectively rewarded the State for employing careless scriveners by creating a rule that makes it more difficult for a defendant to obtain relief when a prosecutor drafts a defective charging instrument.

*Hall* opined that "[t]he proper procedure for a defendant who contends either that the information does not charge a crime or that the court was without jurisdiction of the crime charged is to utilize the statutory remedy extended by the legislature for these two specific situations—a K.S.A. 22-3502 motion for arrest of judgment." 246 Kan. at 760. The opinion clarified that if a defendant files a timely motion for arrest of judgment, the district court is to apply the rationale of the pre-*Hall* cases. That prior rationale included the bright-line rule "that an information which omits one or more of the essential elements of the crime it attempts to charge is jurisdictionally and fatally defective and a conviction on that offense must be reversed. [Citation omitted.]" 246 Kan. at 747. Further, "the citation to the statue cannot substitute to supply a missing element of the charge, and . . . incorporations by reference cannot be implied and will not be inferred but must be explicit. [Citation omitted.]" 246 Kan. at 746.

But for "[i]nformation defect challenges raised for the first time on appeal," *i.e.*, where the defendant did not file a motion for arrest of judgment, *Hall* crafted a new rule to be applied prospectively. 246 Kan. at 765. The rule has been carried forward and applied in Jessica's Law cases. See, *e.g.*, *Inkelaar*, 293 Kan. at 434; *Reyna*, 290 Kan. at 678. The *Hall* language which is sometimes paraphrased reads as follows:

"Of paramount importance, we shall look to whether the claimed defect in the information has: (a) prejudiced the defendant in the preparation of his or her defense; (b) impaired in any way defendant's ability to plead the conviction in any subsequent prosecution; or (c) limited in any way defendant's substantial rights

to a fair trial under the guarantees of the Sixth Amendment to the United States Constitution and the Kansas Constitution Bill of Rights, § 10. If a defendant is able to establish a claim under either (a), (b), or (c), the defective information claim, raised for the first time on appeal, will be allowed." 246 Kan. at 765.

It gives one pause to look closely at how the *Hall* rule works. During the jury trial, the charging document would be jurisdictionally and fatally defective if it omitted an essential element and the trial court would not have jurisdiction to enter any resulting conviction. However, if the defendant later failed to file a motion for arrest of judgment, the charging document and resulting conviction would somehow acquire retroactive validity. That notion appears to run counter to the rule that subject matter jurisdiction cannot be created by waiver, estoppel, or consent. See *Ellmaker*, 289 Kan. at 1151. Likewise, the constraint on raising the jurisdictional issue for the first time on appeal is inconsistent with our holdings that allow a challenge to the district court's subject matter jurisdiction to be raised at any time. See *State v. Sales*, 290 Kan. 130, 135, 224 P.3d 546 (2010). Moreover, we recently declared that appellate courts have "no authority to create equitable exceptions to jurisdictional requirements." *Board of Sedgwick County Comm'rs v. City of Park City*, 293 Kan. 107, Syl. ¶ 3, 260 P.3d 387 (2011). *Hall* dealt with this conundrum by suggesting that a defective charging instrument is not really an issue of subject matter jurisdiction. However, we have not been asked to revisit *Hall* and our ultimate resolution will not require the application of that case's restrictive rule.

In its brief, the State argues that, because Portillo did not file a motion for arrest of judgment, we must apply the post-*Hall* test, as we did in *Reyna*. This case poignantly illustrates the logistical problem of requiring the defendant to file a motion for arrest of judgment in a circumstance where the State charges and prosecutes the on-grid version of a crime, but then asks for the off-grid sentence. Indeed, here, the first indication on the record that the State really had intended to charge the off-grid version of rape was when it filed a motion to amend the PSI, well after the deadline for a motion for arrest of judgment had passed. Apparently, the *Hall* court did not address the potential problem with timing be-

cause it was confused about when the defendant was required to file a motion for arrest of judgment. The opinion related that the remedy was "available for 10 days after *disposition* at the trial court level." (Emphasis added.) 246 Kan. at 760. However, the two-decades-old statute at the time required the defendant to file the motion "within 10 days after the verdict or finding of guilty, or after a plea of guilty or *nolo contendere*, or within such further time as the court may fix during the 10-day period." L. 1970, ch. 129, § 22-3502. Ordinarily, then, a defendant could not wait until the disposition of the case was complete at the trial court level because sentencing is usually scheduled more than 10 days after the guilty verdict. Yet, the defendant, as in this case, might not know that the charging document was defective, *i.e.*, know that a motion for arrest of judgment is needed, until the State shows its hand and convinces the court to sentence defendant for an uncharged, but more severe, version of the crime.

Fortunately, we can avoid the problem of requiring a defendant to file a motion before he or she knows it is required by looking at the rationale for the *Hall* rule and applying the provisions of K.S.A. 22-3503. *Hall* noted that its requirement of a K.S.A. 22-3502 motion for arrest of judgment "would allow the district court to pass on the defendant's contentions in timely fashion and to comply with what we deem to be the procedure intended by the legislature." 246 Kan. at 760. What *Hall* did not discuss is that K.S.A. 22-3503 allows the trial court to arrest judgment without a motion by defendant and without the time constraints of K.S.A. 22-3502. Specifically, K.S.A. 22-3503 provides: "Whenever the court becomes aware of the existence of grounds which would require that a motion for arrest of judgment be sustained, if filed, the court may arrest the judgment without motion."

At sentencing, the State asked the district court to amend the PSI to reflect that Portillo should be sentenced under Jessica's Law for an off-grid felony. While that maneuver was ineffective to remedy the fact that the information omitted an essential element of the off-grid version of rape, it did provide the opportunity for the parties to make the arguments which would have been presented upon a motion for arrest of judgment. Both parties argued their

respective interpretation as to the applicability of this court's holding in *Gracey*. The State, after conceding that its information failed to charge off-grid rape, also argued that the trial court should apply the post-*Hall* prejudice test because Portillo had not timely filed a motion for arrest of judgment. Through the parties' arguments, the district court was made aware of the existence of grounds which would require that a motion for arrest of judgment be sustained. Accordingly, the district court could have ruled on defendant's contentions in a timely fashion and complied with the procedure intended by the legislature in K.S.A. 22-3503, as *Hall* envisioned. Therefore, we will not view the charging document challenge as being raised for the first time on appeal and will test the information in this case under the pre-*Hall* standards.

As noted, the State conceded that its information did not charge Portillo with the off-grid version of rape, and we agree with that concession. The defendant's age being 18 or older is an essential element of the off-grid version of the crime. See K.S.A. 21-3502(c); *Reyna*, 290 Kan. at 676. The information did not contain that essential element. That omission rendered the information fatally defective and deprived the trial court of jurisdiction to convict Portillo of the off-grid version of rape. See *State v. Sanford*, 250 Kan. 592, 600-01, 830 P.2d 14 (1992).

The district court's sentence, based upon a conviction for the off-grid person felony, must be vacated. But Portillo did not challenge the validity of the information with respect to the on-grid, severity level 1, person felony version of rape. Accordingly, we remand for resentencing based upon the appropriate grid-box for the severity level 1 person felony. In the event the district court again considers a departure, the provisions of the sentencing guidelines will govern that procedure.

Convictions affirmed, and sentence vacated and remanded for resentencing.