NOT DESIGNATED FOR PUBLICATION

No. 128,427

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JERRID WILLIAM JOHNSTON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; JESSICA HEINEN, judge. Submitted without oral argument. Opinion filed May 8, 2026. Affirmed.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, deputy district attorney, *Michael F. Kagay*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., ATCHESON and CLINE, JJ.

CLINE, J.: Jerrid William Johnston was pulled over in Shawnee County driving a truck that was stolen in Jackson County. He was charged with theft in Shawnee County and pleaded guilty. At the joint sentencing and restitution hearing, Johnston was ordered to pay restitution for the victim's insurance deductible, costs to repair alterations that had been made to the truck, and the value of items that were missing from the truck when it was recovered.

1

At the sentencing and restitution hearing, Johnston denied stealing the truck—he said he bought it from a friend. While he agreed to pay restitution to repair alterations he made to the truck, he claimed he was not responsible for the victim's deductible and missing items because he said those losses are attributable to the Jackson County theft. He challenges those portions of the district court's restitution order on appeal.

After reviewing the record, we do not find the district court abused its discretion in ordering restitution. The district court did not find Johnston's explanation for his possession of the stolen truck credible and the causal link between Johnston's crime and the victim's loss is supported by substantial competent evidence. See *State v. Arnett*, 307 Kan. 648, 653, 413 P.3d 787 (2018). We therefore affirm the restitution order.

FACTUAL AND PROCEDURAL BACKGROUND

*Jackson County Theft*

In early June 2022, Christopher Shumaker's 2004 Ford F-250 truck was stolen from his farm in Jackson County. Shumaker estimated the truck was worth $12,000.

After reporting the truck stolen, Shumaker made a claim with his insurance company for items that were in the truck. Some of the items were covered, but auto parts and farm equipment were excluded from coverage under his policy. Shumaker was also responsible for a $500 deductible.

*Shawnee County Possession of Stolen Property*

On July 11, 2022, law enforcement stopped Johnston for failing to signal before making a turn. Johnston gave the officer his information and "advised he had a warrant for his arrest, there was a fake tag on the back of the truck, and there was no insurance."

2

Because Johnston told the officer the tag was fake, the officer then ran the VIN on the truck, which revealed that the truck had been reported stolen. Johnston was arrested.

Johnston told the arresting officer that he had bought the truck from a "'shady'" friend of a friend. Johnston said he thought the name the seller gave him was fake, but Johnston looked past that because he wanted to buy the truck. Johnston claimed he traded his Ford Expedition—which Johnston valued at $4,000—and then made two payments of $1,000 in exchange for the truck. Johnston said that he ran the truck's VIN on an app to see if it had been stolen and said that he should have called the police to have the VIN run as well. He said he suspected the truck was stolen when the seller stopped responding after the payments were made and he never got a title to the truck.

*Return of Stolen Truck*

When the truck was returned to Shumaker, most of his belongings had been removed, and the truck was not in the same condition as it was at the beginning of June. The only items recovered were wire stretchers, a hammer with Shumaker's initials stamped on it, and an ice scraper. A fiberglass hood scoop had been screwed into the hood of the truck, the toolbox had been spray-painted a different color, and the truck had a lower quality grille installed on it.

*Legal History*

Johnston was charged with theft, no liability insurance, illegal registration, and failing to give signal when making a turn. He eventually agreed to plead guilty to the theft charge in exchange for dismissal of the other charges. As part of the plea agreement, Johnston agreed "to pay all verifiable restitution including restitution for dismissed charges."

Before sentencing, the State filed a notice of intent to seek restitution on behalf of Shumaker. This included a list of the items and damages, not covered by insurance, that Shumaker sought restitution for, which included: a post driver worth $31.99, an electric cattle prod worth $58.99, a powerstroke compound kit worth $4,523.77, the original grille restored for $28.50, repairs to the hood and toolbox of the truck, which was quoted at $1,801.06, and the $500 insurance deductible. These items and repairs totaled $6,944.31.

Both Schumaker and Johnston testified at the joint restitution and sentencing hearing. Schumaker described the items that were in the truck at the time it was stolen, along with the corresponding values of each item. Johnston again claimed he bought the truck and said there was nothing in it when he bought it. He admitted installing the hood scoop and spray painting the truck's grille. But he said he did not remember the truck having a toolbox.

The district court sentenced Johnston to 12 months of supervised probation with an underlying aggravated sentence of 17 months' imprisonment, which was in line with the plea agreement. As for restitution, the court found Johnston's testimony about how he got the truck was not credible. It also found there was a causal connection between Johnston's crime and Schumaker's claimed losses and ordered restitution in the amount of $6,944.31. The court agreed to Johnston's proposed payment plan of $100 per month towards the restitution and allowed Johnston to pay court costs and fees through community service.

REVIEW OF JOHNSTON'S APPELLATE CHALLENGE

Johnston raises one issue on appeal—whether the district court abused its discretion when awarding restitution. He contends his unlawful possession of the truck in Shawnee County was a different and distinct crime from the theft of the truck in Jackson

4

County. He attributes the loss of the items in the truck (and the insurance deductible) to what he calls the Jackson County crime and says that crime was an intervening factor which severed the causal link between his Shawnee County theft and Shumaker's Jackson County loss. Johnston asserts that the only damages he can be liable for are the costs to repair the alterations he made to the truck, since he contends those are the only ones with a logical nexus to the Shawnee County theft.

*Standard of Review and Relevant Legal Framework*

An appellate court reviews "the 'amount of restitution and the manner in which it is made to the aggrieved party'" for abuse of discretion. *State v. Union*, 319 Kan. 214, 219, 553 P.3d 320 (2024). A judicial action constitutes an abuse of discretion if: "(1) it is arbitrary, fanciful, or unreasonable . . . ; (2) it is based on an error of law . . . ; or (3) it is based on an error of fact." *State v. Bilbrey*, 317 Kan. 57, 63, 523 P.3d 1078 (2023). "Substantial competent evidence must support every restitution award." *State v. Smith*, 317 Kan. 130, 139, 526 P.3d 1047 (2023). An appellate court reviews a district court's factual findings relating to the causal link between the crime and the victim's loss for substantial competent evidence. *Arnett*, 307 Kan. at 653.

Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. Smith*, 312 Kan. 876, 887, 482 P.3d 586 (2021). It "does not require evidence to *prove* a fact; rather, it simply requires evidence to sufficiently *support* the fact-finder's conclusion." *State v. Morley*, 312 Kan. 702, 712, 479 P.3d 928 (2021).

When determining whether substantial competent evidence exists, "an appellate court must not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact." *Granados v. Wilson*, 317 Kan. 34, 41, 523 P.3d 501 (2023). In a case where the appellate court must review the district court's finding for

substantial competent evidence, the appellate court is reviewing a district court's findings of fact, so "it must not substitute its own judgment of the facts and assessment of witness credibility for that of the district court, even when it reasonably finds witness testimony 'unpersuasive.'" 317 Kan. at 55.

K.S.A. 21-6604(b)(1) requires that any restitution ordered in a criminal case be based on "damage or loss caused by" the crime. And in *Arnett*, 307 Kan. at 655, the Kansas Supreme Court concluded "that the causal link between a defendant's crime and the restitution damages for which the defendant is held liable must satisfy the traditional elements of proximate cause: cause-in-fact and legal causation." Restitution may be allowed for some tangential costs linked to the crime. *State v. Alcala*, 301 Kan. 832, 837-40, 348 P.3d 570 (2015).

> *Johnston's attempt to separate the theft of the truck into independent Jackson County and Shawnee County thefts seems to allege an error in the charging complaint or indirectly challenge venue, neither of which would be successful.*

The grand jury indicted Johnston for theft under K.S.A. 21-5801(a)(1) and (b)(3), finding that there was probable cause to believe that Johnston unlawfully and feloniously obtained or exerted unauthorized control over the truck, with the intent to permanently deprive Shumaker of the possession, use, or benefit of said property. Whereas on appeal, Johnston frames his "Shawnee County crime" as receipt of stolen property, which would have been charged under K.S.A. 21-5801(a)(4), pertaining to "obtaining control over stolen property or services knowing the property or services to have been stolen by another."

Before 2016, and the Kansas Supreme Court's decision in *State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016), whether a criminal complaint was sufficient to confer subject matter jurisdiction was a question of law over which appellate courts have unlimited review. *State v. Gracey*, 288 Kan. 252, 254, 200 P.3d 1275 (2009). Yet appellate courts

6

reviewed the adequacy of the charging document using different standards based on whether the issue was raised before the trial court or for the first time on appeal. Cf. *State v. Hurd*, 298 Kan. 555, 565, 316 P.3d 696 (2013) (if complaint omits essential element, it deprives court of subject matter jurisdiction to convict); *State v. Portillo*, 294 Kan. 242, 254-55, 274 P.3d 640 (2012) (when raised for first time on appeal, claimed defect must have prejudiced defendant in preparation of defense, impaired defendant's ability to plead conviction in subsequent prosecution, or limited defendant's constitutional right to fair trial).

The evaluation of defective criminal complaints changed in *Dunn*, which recognized three types of charging-document defects. 304 Kan. at 815. None of these defects prevent or destroy the existence of subject matter jurisdiction over criminal cases in district or appellate courts as subject matter jurisdiction in criminal cases is conveyed by the Kansas Constitution, not charging documents. 304 Kan. at 815-16. Because each of the defects involves the interpretation of statutes, constitutional provisions, and written instruments, the standard of review for such challenges raised on appeal is de novo. 304 Kan. at 819.

Although new allegations of a defective complaint raised on appeal are not prohibited under K.S.A. 22-3208(3), they are subject to the general rule that issues may not be raised for the first time on appeal unless the defendant demonstrates that an exception to the usual preservation rule should be applied. Those exceptions are that the (1) newly asserted claim involves only a question of law arising on proved or admitted facts, determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or prevent the denial of fundamental rights; or (3) the district court decision was right for the wrong reason. 304 Kan. at 819.

7

Here, Johnston failed to adequately demonstrate that any exception would allow his veiled argument to proceed. Thus, we view his crime as it was charged under K.S.A. 21-5801(a)(1), and not as receipt of stolen property.

That said, when a thief takes property from one county to another, venue is permitted in either the county where the theft occurred or in any county into which the thief later took the property. K.S.A. 22-2609. As a result, Johnston could be charged in either Shawnee County or Jackson County for theft of Shumaker's truck. So we do not find the State's decision to charge him in Shawnee County to be dispositive of his claim.

*There is sufficient competent evidence to support the restitution imposed by the district court.*

There must be a causal link between a defendant's crime and the restitution damages for which the defendant is held liable, and it must satisfy the traditional elements of proximate cause: cause-in-fact and legal causation. *Alcala*, 301 Kan. at 837-40. Cause-in-fact looks at the cause and effect relationship between the defendant's conduct and the loss, requiring a showing that it was more likely than not that but for the defendant's conduct, the loss would not have occurred. And legal causation examines the foreseeability of harm resulting from the action. *Burnette v. Eubanks*, 308 Kan. 838, 846, 425 P.3d 343 (2018).

Because this court must not substitute its own judgment of the facts and assessment of witness credibility for that of the district court, we must accept that the district court did not find Johnston's testimony credible. This means that Johnston's claims that he purchased the truck and that none of the items were in it when he took possession of the truck cannot be relied on to sever the causal connection between his theft of the truck and the missing items.

8

In addition, there was sufficient evidence to conclude Johnston stole the truck and therefore the loss of the items in the truck would be directly linked to that crime. The truck had been altered to perhaps change its appearance, including adding a nonfunctioning hood scoop and spray-painting the grille and tool box. It also had a fake tag when Johnston was stopped while driving it, and there was no liability insurance on the truck in Johnston's name, which likely would have required the VIN and title to obtain. And the fact that some of Shumaker's items were still in the truck when it was recovered undercuts Johnston's claim that none of the missing items were in the truck when he took possession of it. As for foreseeability, we find it foreseeable for a defendant who steals a vehicle to anticipate being held responsible for items that are in that vehicle when the crime occurs.

Thus, we find there was substantial competent evidence to support that the missing items were proximately caused by Johnston's actions. And since Johnston does not dispute the value of the missing items, we need not address that issue.

Because the missing items have a causal link to the crime Johnston committed, we find the district court did not abuse its discretion in assessing restitution.

Affirmed.