No. 105,678

STATE OF KANSAS, *Appellee,* v. DANIEL ALLEN BROWN, *Appellant.*

(318 P.3d 1005)

Opinion filed February 28, 2014.

*Rachel L. Pickering*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Gerald R. Kuckelman*, county attorney, argued the cause, and *Derek Schmidt*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: A jury found Daniel Brown guilty of rape and aggravated indecent liberties with a child. The elements jury instructions did not include Brown's age, but the jury answered in the affirmative to special questions on the verdict forms as to whether Brown was 18 years of age or older at the time the offenses were committed. In the process of sentencing Brown to two consecutive off-grid sentences of life imprisonment, with both having a mandatory minimum term of 25 years (hard 25), the journal entry of sentencing imposed lifetime electronic monitoring and lifetime postrelease supervision.

Brown appeals his convictions and sentences, claiming: (1) The district court erred by accepting the jury's verdicts without first inquiring into their accuracy; (2) the district court erred in submitting the element of age to the jury in special questions on the verdict forms; (3) there was insufficient evidence submitted to sus-

tain the convictions for rape and aggravated indecent liberties with a child; (4) the prosecutor committed reversible misconduct during closing arguments; (5) the district court erred in imposing lifetime electronic monitoring as part of his sentences; (6) the journal entry of sentencing does not correctly reflect the sentences pronounced from the bench; and (7) cumulative error denied him a fair trial. We take the liberty of consolidating and reordering the issues for our discussion and, ultimately, we affirm Brown's convictions and two consecutive hard 25 life sentences, but we vacate the portions of the sentences ordering lifetime postrelease supervision and lifetime electronic monitoring and remand with directions.

## FACTUAL AND PROCEDURAL OVERVIEW

In May 2010, 11-year-old J.D. was sleeping inside her home while her mother and stepfather, Brown, partied outside. According to J.D., sometime in the early morning hours she awoke when Brown entered her bedroom, laid down next to her, and placed his hand on her breast, underneath her clothing.

After Brown left for work the next morning, J.D. told her mother that Brown had come into her room the night before but did not provide any other details. When Brown returned home from work that day, he took J.D. to a nearby field to practice calling turkeys. When the two returned to the house, J.D. eventually told her mother that Brown had raped her at the field. Her mother immediately took J.D. to the hospital, where law enforcement was summoned. That same evening, J.D. informed a pediatric sexual assault examiner that Brown had rubbed his saliva on J.D.'s vagina before penetrating it with his penis. A physical examination revealed injuries to J.D.'s vagina that were consistent with J.D.'s statement that a violent sexual act had recently taken place.

Brown was arrested and charged with one count of aggravated indecent liberties with a child and one count of rape. J.D.'s trial testimony was that after taking her to a field to practice turkey calling, Brown raped her while he stood outside the passenger door of the truck and she was lying across the front seat. J.D. related that Brown took something from his hand and placed it on his penis before effecting vaginal penetration.

A forensic scientist from the Kansas Bureau of Investigation (KBI) testified that blood and saliva, but no seminal fluid, were located on the underclothing J.D. was wearing at the time of the rape. The blood was consistent with J.D.'s blood type. The scientist also testified that penile swab samples taken from Brown shortly after the alleged rape tested consistent with J.D.'s DNA profile. However, upon cross-examination, the KBI scientist admitted the possibility that the samples could have come from one of J.D.'s relatives, such as her mother.

At trial, Brown testified that he had lived in Muscotah, Kansas, since 1991 and had worked at Armstrong Tires for over 13 years. While Brown admitted to taking J.D. turkey calling, he denied raping her. Brown also denied entering J.D.'s room and placing his hand on her breast. Brown offered that he believed that J.D. had fabricated the story implicating him because J.D. was upset that Brown planned to divorce her mother.

The jury convicted Brown of rape and aggravated indecent liberties with a child. The court sentenced him to two consecutive terms of hard 25 life imprisonment.

## JURY INSTRUCTIONS ON THE ELEMENT OF DEFENDANT'S AGE

Brown challenges the elements instructions for both crimes because they did not tell the jury that it had to find that Brown was age 18 or older before it could convict him of the charged crimes. He contends that submitting the age element in special questions on the verdict forms meant that the jury would make its findings of guilt before determining the existence of the requisite age element, which in turn would prevent the jury from properly considering the age element in conjunction with the other jury instructions that guide the jury in weighing and evaluating evidentiary issues within a criminal trial.

### Standard of Review

Brown initially objected to the elements instructions on the basis that they failed to include his age as an element of each crime. When the district court explained that the age element was included on the verdict forms by special questions, as recommended

by the Notes on Use to the pattern instructions in PIK Crim. 3d
57.01 and PIK Crim. 3d 57.06, defense counsel withdrew the ob-
jection. That circumstance leaves us in the position of employing
a clearly erroneous standard of review. See *State v. Williams*, 295
Kan. 506, 510, 286 P.3d 195 (2012) (when instruction issue not
properly preserved with appropriate objection in trial court, ap-
pellate court refers to K.S.A. 22-3414(3) to recite that the standard
of review is whether the instruction is clearly erroneous). Jury in-
structions are clearly erroneous only if we are firmly convinced that
the jury would have reached a different verdict had the error not
occurred. *State v. Tully*, 293 Kan. 176, 196, 262 P.3d 314 (2011).

*Analysis*

Brown was charged with rape, in violation of K.S.A. 21-
3502(a)(2), which defines rape as sexual intercourse with a child
who is under 14 years of age. The statute also provides that rape,
as described in subsection (a)(2), is an off-grid person felony when
the offender is 18 years of age or older. K.S.A. 21-3502(c). "In
other words, the statute defining rape makes a defendant's age—
18 years or older—an element of the off-grid version of the crime."
*State v. Portillo*, 294 Kan. 242, 252, 274 P.3d 640 (2012).

Brown was also charged with aggravated indecent liberties with
a child, in violation of K.S.A. 21-3504(a)(3)(A), which is defined as
"[a]ny lewd fondling or touching of the person of either the child
or the offender, done or submitted to with the intent to arouse or
to satisfy the sexual desires of either the child or the offender, or
both," when the child is under 14 years of age. Similarly, K.S.A.
21-3504(c) provides that aggravated indecent liberties with a child
is an off-grid person felony when the offender is 18 years of age or
older. Consequently, the ages of both the victim and the defendant
form an essential part of the elements of the off-grid versions of
rape and aggravated indecent liberties with a child.

In *State v. Bello*, 289 Kan. 191, Syl. ¶ 4, 211 P.3d 139 (2009),
we held that off-grid offenses implicating the enhanced sentencing
provisions of Jessica's Law, K.S.A. 21-4643, which mandate a min-
imum 25-year term of life imprisonment, require a jury determi-
nation that the defendant was 18 years of age or older at the time

of the charged crimes. We reasoned that age was an essential element of the offenses, even if it was only used to increase the defendant's sentences for such crimes.

"In *Apprendi*, the Supreme Court clarified that merely because a state legislature places a sentence enhancing factor within the sentencing provisions of the criminal code does not mean that the factor is not an essential element of the offense. *Apprendi* [*v. New Jersey*], 530 U.S. [466, 495, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)]. If a 'sentencing factor' is used to increase a defendant's sentence beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict. *Apprendi*, 530 U.S. at 494 n.19; see *Ring v. Arizona*, 536 U.S. 584, 602, 153 L. Ed. 2d 556, 122 S. Ct. 2428 (2002)." *Bello*, 289 Kan. at 199.

See also *State v. Brown*, 291 Kan. 646, 663, 244 P.3d 267 (2011) ("defendant's age at the time of the offense is an element of the crime if the State seeks to convict the defendant of the more serious, off-grid level of the offense"); *State v. Kemble*, 291 Kan. 109, 126, 238 P.3d 251 (2010) (same).

Because the defendant's age is an essential element of the off-grid crimes of rape and aggravated indecent liberties with a child, Brown was entitled to have the jury instructed on his age as part of the elements instructions. See *State v. Richardson*, 290 Kan. 176, 181, 224 P.3d 553 (2010) (trial court has duty to "inform the jury of every essential element of the crime that is charged"). A jury is vested with the duty to determine whether a defendant is guilty or not guilty of each charged crime; and in fulfilling that duty, it must apply the law to the facts as it finds them. Therefore, the failure to properly instruct a jury on the essential elements of the crime charged typically prevents the jury from rendering a proper verdict. See *State v. Castoreno*, 255 Kan. 401, 410, 874 P.2d 1173 (1994). Moreover, a defendant's right to have the jury properly instructed on all essential elements of the charged crime is rooted in the Sixth Amendment to the United States Constitution, which guarantees a defendant's right to trial by jury. See *United States v. Gaudin*, 515 U.S. 506, 522-23, 115 S. Ct. 2310, 132 L. Ed. 2d 444 (1995) ("The Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged.").

Here, the jury actually made a finding that Brown was age 18 or older, but it did so in the form of an answer to special questions on the verdict forms rather than in guilty verdicts that were informed by instructions that included the defendant's age as an enumerated element. The question for us, then, is whether that distinction makes any difference.

Some 40 years ago, in *State v. Osburn*, 211 Kan. 248, Syl. ¶ 5, 505 P.2d 742 (1973), this court made that distinction, specifically finding that the use of special questions is prohibited in criminal trials. The criminal defendant in *Osburn* requested the submission of seven special questions to the jury in conjunction with the verdict forms. The trial court denied the request, and the defendant appealed. This court recognized the distinction between civil procedure, which allows for the submission of special questions, and criminal procedure, which does not. The court reasoned that the distinction arose from the different functions performed by the two types of juries. Typically, civil juries are required to find the facts, leaving it to the court to apply the law. But in criminal cases, " 'it has always been the function of the jury to apply the law, as given by the court in its charge, to the facts. This doctrine preserves the power of the jury to return a verdict in the teeth of the law and the facts.' " 211 Kan. at 255 (quoting 2 Wright, Federal Practice and Procedure: Criminal § 512, p. 364). Specifically, *Osburn* concluded:

"In view of the differences in our civil and criminal statutes relating to verdicts it is apparent the legislature intended to preserve the time honored power of the jury to return a verdict in a criminal prosecution in the teeth of the law and the facts. Therefore we hold that special questions may not be submitted to the jury for answer in a criminal prosecution. In general the only proper verdicts to be submitted in a criminal prosecution are 'guilty' or 'not guilty' of the charges." 211 Kan. at 255-56.

When Brown's case was tried, *Osburn* was binding precedent. Nothing that has been presented here persuades us to revisit the rule prohibiting the use of special questions in criminal proceedings. In making that evaluation, we are cognizant of the unpublished Court of Appeals decision in *State v. Cash*, No. 107,007, 2013 WL 1149677, at *4-6 (Kan. App. 2013) (unpublished opinion),

which held that the element of age may be submitted as a special question to the jury on the verdict form despite *Osburn's* holding. The *Cash* panel determined that although special *verdicts* are disfavored in criminal law, "[t]he request for the additional finding of whether he [Cash] was 18 years old or older at the time of the offense—only after the jury found him guilty of rape—would not appear to fall within the category of a prohibited special *verdict*." (Emphasis added.) 2013 WL 1149677, at *5.

We discern that the *Cash* panel appears to have mischaracterized *Osburn's* holding. The panel speaks of *Osburn's* disfavoring special verdicts, when in fact *Osburn* clearly prohibits special questions in criminal proceedings. A special verdict "is one where the jury does not render a general verdict of guilty or not guilty, but simply finds certain facts and leaves the rest to the court." Note, *Beyond "Guilty" or "Not Guilty": Giving Special Verdicts in Criminal Jury Trials*, 21 Yale L. & Pol'y Rev. 263, 263 (2003). Obviously, a jury's additional finding regarding age that occurs *after* the jury renders a guilty verdict would not constitute a special verdict. Moreover, *Osburn* addressed the use of special *questions*, which "provide additional information that accompanies, but does not replace, the general verdict." 21 Yale L. & Pol'y Rev. at 263-64. *Cash* likewise involved a special question, making its purported distinction from *Osburn* inapposite. Accordingly, we discern nothing in *Cash* that persuades us *Osburn* does not apply to the facts of this case.

Granted, the legislature has now established procedures whereby sentence-enhancing fact(s), *i.e.*, elements of a greater offense, may be determined by a jury after it has already reached an initial verdict of guilty on the lesser degree of the offense. For example, when a prosecutor seeks an upward durational departure sentence, K.S.A. 2013 Supp. 21-6817(b)(2) allows the court to determine whether the evidence of the alleged sentence-enhancing fact or factor shall be presented and proved to the jury during the guilt phase of the trial or "whether such evidence should be submitted to the jury in a separate departure sentencing hearing following the determination of the defendant's innocence or guilt." Such serial factfinding is similar to that effected through the verdict

forms special questions in this case. But the critical difference is that the trial court in this case had no statutory authority to use the special questions. In *State v. Kessler*, 276 Kan. 202, 217, 73 P.3d 761 (2003), this court disapproved of a court-made procedure that was designed to save the constitutionality of a sentence, declaring that "[a] district court's authority to impose sentence is controlled by statute." See also *State v. Horn*, 291 Kan. 1, 10, 238 P.3d 238 (2010) (employment of sentencing procedure which does not comply with applicable statute must be deemed unauthorized and erroneous).

But given our review standard, a finding of error does not necessarily lead to a reversal. We must find that failing to include the element of age in the jury instructions on the crimes' elements and submitting the same to the jury as special questions on the verdict forms prejudiced Brown to the extent that we can declare the instructions were clearly erroneous. See *Williams*, 295 Kan. at 516 (defendant not entitled to reversal unless court is firmly convinced that jury would have reached different verdict had instruction error not occurred). Brown proffers several arguments as to why the jury would have reached a different result had the jury instructions included age as an element of the charged crimes. For instance, he argues that the special questions prevented the jury from determining the element of age in light of the other jury instructions which explained the burden of proof, as well as the distinction between argument and evidence. Brown also reasons that placing the element of age in special questions on the verdict forms drastically lessened the importance of age as an essential element because the jury had already reached a finding of guilty on the charged crimes. In other words, when a jury engages in serial fact-finding, it may be more inclined to find subsequent inculpatory facts after having already found the defendant guilty.

While Brown's arguments illustrate why special questions should not be used in criminal proceedings, they do not trump this court's holding in *State v. Reyna*, 290 Kan. 666, Syl. ¶ 9, 234 P.3d 761, *cert. denied* 131 S. Ct. 532 (2010), where we found harmless error despite a complete absence of any jury finding on the defendant's age. Reyna was convicted of four charges of aggravated indecent

liberties with a child and sentenced to life without possibility of parole for 25 years pursuant to K.S.A. 2006 Supp. 21-4643(a)(1)(C). On appeal, the defendant argued, *inter alia*, that the district court's failure to instruct the jury that he was over the age of 18 at the time of the offenses violated his Sixth Amendment right to have a jury determine an essential element of the crimes. We agreed but concluded that the failure to instruct the jury on the essential element of age was harmless in light of the fact that Reyna had testified that he was 37 years old at the time of trial and the record contained no evidence that "could rationally lead to a contrary finding with respect to the element that the defendant was over the age of 18 at the time of the crime[s]." 290 Kan. at 682. In other words, where the appellate record convinces the appellate court that the jury would have found the essential element if it had been asked to do so, the failure to obtain the jury's finding is harmless error.

Here, unlike *Reyna*, the record reflects that the jury *was* involved in the question of the defendant's age. Its answer to the special questions established that the jury determined Brown to be age 18 or older at the time of the offenses. Furthermore, the record contains evidence from which the jury was justified in drawing that inference. Specifically, Brown testified that he had lived in Muscotah since 1991, which was 19 years prior to the 2010 crimes. Brown's attempt to characterize that testimony as only implying that his family had lived in the town since 1991 does not comport with the manner in which the question about residency was asked and answered. Inferences of fact are permitted only when supported by logic and human experience. *State v. Sherrer*, 259 Kan. 332, 340, 912 P.2d 747 (1996). Moreover, the inference that Brown was older than 18 was further bolstered by his testimony that he had worked at Armstrong Tire for over 13 years, given that a presumption Brown commenced that employment when he was older than 5 years is reasonable.

If harmless error applies where the jury has no involvement in finding that the defendant was age 18 or older when committing the crime, but the record discloses that all of the evidence establishes the defendant's age at 18 or older, then it necessarily follows

that harmless error is applicable to a jury finding of that essential age element, notwithstanding the procedural infirmity of eliciting the age finding through special questions on the verdict forms. Accordingly, based upon our concept of harmless error emanating from *Reyna*, we affirm Brown's convictions for the off-grid crimes of rape and aggravated indecent liberties with a child.

## PROSECUTORIAL MISCONDUCT IN CLOSING ARGUMENT

Brown claims that the prosecutor committed three instances of misconduct during closing argument by (1) misstating the sexual assault nurse's testimony; (2) making improper remarks about Brown's sexual desires that were unsupported by the record; and (3) making improper and prejudicial remarks about Brown's treatment of his wife that had no relevance to the issues at trial. Although we find that the prosecutor erroneously argued facts not in evidence, we do not find that the misconduct requires reversal.

### Standard of Review/Applicable Tests

A claim of prosecutorial misconduct based on comments made during closing argument will be reviewed on appeal, even where there was no contemporaneous objection. *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 (2009). Such review involves a two-step process. First, we decide whether the comments were outside the wide latitude that a prosecutor is allowed in discussing the evidence. *State v. Marshall*, 294 Kan. 850, 856, 281 P.3d 1112 (2012). If the comments were improper and constituted misconduct, we then determine whether the comments prejudiced the jury against the defendant and denied the defendant a fair trial. 294 Kan. at 856. Under this second step, we consider three factors. First, was the misconduct gross and flagrant? Second, was the misconduct motivated by ill will? Third, was the evidence of such a direct and overwhelming nature that the misconduct would have had little weight in the mind of a juror? See *State v. Bridges*, 297 Kan. 989, Syl. ¶ 15, 306 P.3d 244 (2013). None of the three factors is individually controlling. *State v. Adams*, 292 Kan. 60, 66, 253 P.3d 5 (2011).

Finally, in considering the third factor, this court requires that the prosecutorial misconduct error meets the "dual standard" of both constitutional and statutory harmlessness in order to uphold a conviction. *State v. Tosh*, 278 Kan. 83, 97, 91 P.3d 1204 (2004). The State bears the burden of demonstrating harmlessness under both standards. However, if the State meets the higher constitutional harmless error standard, the State necessarily meets the lower statutory standard under K.S.A. 60-261. See *Bridges*, 297 Kan. at 1012-13, 1015. The constitutional, or *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, *reh. denied* 386 U.S. 987 (1967), harmless error standard provides that

"error may be declared harmless where the party benefitting from the error proves beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict." *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012) (citing *Chapman*, 386 U.S. 18).

*Analysis*

*Misstatement of Witness Testimony*

During closing argument, the prosecutor stated, "The doctor and the nurse both tell about the injuries. The nurse tells you that [J.D.] acted consistent with other kids that have been molested." But the nurse actually testified that J.D.'s *injuries* were consistent with some type of violent sexual act. There was no evidence presented at trial indicating that J.D.'s behavior was consistent with other children who had been molested. We have previously held that misconduct occurs when a prosecutor states facts that are not in evidence. See *State v. Ly*, 277 Kan. 386, Syl. ¶ 4, 85 P.3d 1200 ("It is clearly improper for the prosecutor to state facts that are not in evidence. When the prosecutor argues facts that are not in evidence, the first prong of the prosecutorial misconduct test is met."), *cert. denied* 541 U.S. 1090 (2004). Even if the prosecutor inadvertently misstated the nurse's testimony, the effect is the same and the error qualifies as prosecutorial misconduct.

Turning to the second step, the first factor is whether the misconduct was gross and flagrant. In *State v. Lowrance*, 298 Kan.

274, 284, 312 P.3d 328 (2013), we found that arguing facts not in evidence was gross and flagrant misconduct because "every prosecutor should know that he or she cannot make arguments for which there is no evidentiary support." The same result obtains here, even though we find under the second factor that there is no evidence that the misconduct was motivated by ill will, *i.e.*, the statement does not appear to have been deliberate, repeated, or in apparent indifference to a court's ruling. See *Marshall*, 294 Kan. 850, Syl. ¶ 7.

Likewise, the third factor weighs against reversal because the prejudicial effect of the prosecutor's misrepresentation is greatly outweighed by the physical evidence implicating Brown in the rape, such as the evidence of sexual trauma and the DNA. Moreover, the nurse's actual testimony—that J.D.'s physical injuries were consistent with a violent sexual act—was arguably stronger evidence of Brown's guilt than the statement wrongly attributed to the nurse. As such, when the prosecutor's misstatement is considered in light of the entire record as a whole, we conclude that it was not reasonably possible that the comment contributed to the verdict.

### Comments Regarding Brown's Sexual Desires

Brown also complains of two remarks by the prosecutor about Brown's sexual desires that Brown claims were not supported by the evidence. First, in discussing Brown's motive, the prosecutor said:

> "But, you know, he comes in, crawls in her bed with her, and he's drunk.

> "Maybe he went in the wrong bedroom and got in the wrong bed.
> "But, you know, he's lived in that house a long time.
> "What did he really go in there for?
> "You know, he slips his hand under the top of her shirt.
> "Could it be that if he and his wife weren't getting along, *he was looking for sex somewhere else*?" (Emphasis added.)

The record did contain evidence of marital discord. Brown testified that he wanted to divorce J.D.'s mother. A prosecutor may comment on a defendant's motive based upon reasonable infer-

ences from the evidence. *State v. Finley*, 273 Kan. 237, 247, 42 P.3d 723 (2002); see also *State v. Foster*, 290 Kan. 696, 723, 233 P.3d 265 (2010) (Inherent in a prosecutor's wide latitude in arguing a case is the freedom to craft arguments that include reasonable inferences based on the evidence.). The prosecutor queried "could it be" that Brown's motive was based on his desire to find sexual gratification from someone other than his wife due to their marital conflict. Such a query does not fall outside the boundaries of fair debate and does not constitute prosecutorial misconduct.

The second statement with which Brown takes issue was the prosecutor's comment that "[y]ou know, he then went to work that next morning. *He must have still had sex on his mind* because he comes home and gets this young girl, takes her out in the field, and has sex with her." (Emphasis added.) Again, the factual scenario is supported by the evidence, and the prosecutor's statement about Brown's state of mind constitutes a permissible inference that was reasonably drawn from the admitted evidence. Accordingly, we find no misconduct in that comment.

### Statement Relating to Brown's Treatment of His Wife

Brown's theory of defense was based on his testimony that J.D. made up the allegations of sexual abuse because Brown planned to divorce J.D.'s mother due to her poor housekeeping skills. On cross-examination, the State challenged Brown's alleged preference for cleanliness by questioning him about his dirty truck. In that vein, the prosecutor argued in closing that Brown did not care about housekeeping and posed the hypothetical question, "Why is he treating [J.D.'s mother] like she's his slave to cook and clean for him?"

Brown argues that this comment was designed to inflame the passions or prejudices of the jury and distract it from its duty to make a decision based upon the evidence and the controlling law. See *State v. Baker*, 281 Kan. 997, 1016, 135 P.3d 1098 (2006). But when a case turns on which of two conflicting stories is true, the parties may advocate for reasonable inferences based on evidence suggesting that certain testimony is not believable. *State v. Hart*, 297 Kan. 494, 505, 301 P.3d 1279 (2013). Here, the prosecutor

was advocating for a reasonable inference, based on the evidence of record, that Brown's testimony was not believable. While the statement may have had limited effect on the debate, it was not outside the wide latitude afforded to the prosecutor during closing argument and did not constitute misconduct.

In sum, while we find that the prosecutor committed misconduct by misstating the sexual assault nurse's testimony, such misconduct did not constitute reversible error.

### SUFFICIENCY OF THE EVIDENCE

Brown argues that his convictions must be reversed because the State failed to present sufficient evidence that he committed the charged offenses when he was 18 years of age or older or that he committed the act of rape.

*Standard of Review*

When the sufficiency of evidence is challenged in a criminal case, this court reviews all the evidence in the light most favorable to the prosecution in determining whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Frye*, 294 Kan. 364, 374-75, 277 P.3d 1091 (2012). In determining whether there is sufficient evidence to support a conviction, this court will not reweigh the evidence or reassess the credibility of the witnesses. *State v. Hall*, 292 Kan. 841, 859, 257 P.3d 272 (2011).

*Analysis .*

As indicated earlier in this opinion, we find unavailing Brown's evidentiary challenge to the age element. His own testimony established that he had resided at a particular location for 19 years prior to the two offenses, making the fact that he was age 18 or older at the time of the offenses a most reasonable, if not compelling, inference.

Likewise, Brown's remaining evidentiary challenge is not compelling. He attempts to attack J.D.'s credibility by claiming that the truck seat on which J.D. was lying was too high for him to have raped her while he was standing outside the passenger door, as she claimed. But the jury rejected that argument and when we review

for the sufficiency of the evidence, we do not reweigh the evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses. See *State v. McCaslin*, 291 Kan. 697, 710, 245 P.3d 1030 (2011). Moreover, J.D.'s testimony was accompanied by the physical evidence of sexual trauma that corroborated her rape allegation. Consequently, we have no problem finding that J.D.'s testimony, together with the physical evidence of vaginal trauma and DNA, provided sufficient evidence to support the rape conviction.

## JURY POLLING PROCEDURE

In Kansas, a defendant has a statutory right to a unanimous jury verdict. K.S.A. 22-3421; K.S.A. 22-3423(1)(d); *State v. Wright*, 290 Kan. 194, 201, 224 P.3d 1159 (2010). Brown argues that the trial court violated this right by accepting the jury's verdicts without inquiring into their accuracy. Brown did not raise this issue before the trial court, which is fatal to his claim in light of our recent holding in *State v. Cheffen*, 297 Kan. 689, 698, 303 P.3d 1261 (2013).

In *Cheffen*, the defendant argued that his right to a unanimous jury verdict was violated because the trial court asked the individual jurors—before the verdict was read—whether it was their verdict, rather than making inquiry after the verdict was read. Cheffen, like Brown, failed to raise this objection before the trial court, but he argued on appeal that this court could review the issue because it involved a fundamental right and constituted a question of law that did not rely on disputed facts. We rejected Cheffen's argument, first holding that the right to a unanimous jury verdict is statutory and not constitutional; therefore, the exception for review of issues involving fundamental rights was not implicated. We also determined that consideration of the issue necessarily involved factual review. As such, we held that "the better rule is to require a party wishing to challenge the trial court's compliance with the procedures set out in K.S.A. 22-3421 for inquiring about a jury's verdict to have raised that issue first with the district court either in the form of a contemporaneous objection or a posttrial motion." 297 Kan. at 698. We concluded that Cheffen's failure to do either precluded appellate review of the issue. 297 Kan. at 699.

Similarly, Brown raised no objection to the verdict inquiry below and did not file a posttrial motion. Pursuant to *Cheffen*, we hold that Brown failed to preserve this issue for appellate court review.

## CUMULATIVE ERROR

Alternatively, Brown claims that even if none of the singular errors addressed above warrant reversal, their cumulative effect requires reversal. The State counters that Brown failed to establish any trial error and that the evidence overwhelmingly established his guilt. Our findings above that it was error to fail to include the defendant's age in the elements instructions and that the prosecutor committed misconduct by stating facts not in evidence during closing argument refute the State's claim of no trial error. Nevertheless, we find that the cumulative effect of those errors did not prejudice Brown to the point of denying him a fair trial and decline to reverse on that basis.

### Standard of Review

This court utilizes a de novo standard when determining whether the totality of circumstances substantially prejudiced a defendant and denied the defendant a fair trial based on cumulative error. *State v. Cruz*, 297 Kan. 1048, 1073-74, 307 P.3d 199 (2013).

### Analysis

The cumulative error analysis is somewhat subjective. 297 Kan. at 1074. The task is to determine whether the cumulative effect of both of the errors is such that collectively they cannot be determined to be harmless. "In other words, was the defendant's right to a fair trial violated because the combined errors affected the outcome of the trial?" *State v. Tully*, 293 Kan. 176, 205, 262 P.3d 314 (2011).

As discussed above, although the jury was not instructed on the element of age, it was given the opportunity to determine Brown's age through the use of special questions on the verdict forms and the jury's answers were adequately supported by the evidence. Further, the prosecutor's misrepresentation of the nurse's testimony was ameliorated by the fact that the nurse's actual testimony was likely more compelling than the prosecutor's misrepresentation of

evidence. Consequently, especially in light of the physical evidence corroborating J.D.'s allegations, we conclude that cumulative error did not affect the trial's outcome and did not deny Brown a fair trial.

## SENTENCING

Finally, Brown alleges that the trial court committed two errors relating to the imposition of his sentences. First, the trial court erroneously sentenced Brown to lifetime electronic monitoring. Second, while the sentencing court said Brown would be subject to lifetime parole after his imprisonment, the journal entry of judgment incorrectly provided that Brown would be subject to lifetime postrelease supervision. Brown requests this court to vacate his sentences and remand the matter for correction. The State concedes the trial court's errors.

### Standard of Review

Both sentencing issues raised by Brown involve an interpretation of K.S.A. 2009 Supp. 22-3717(u), which allows for unlimited review. See *State v. Mason*, 294 Kan. 675, 676, 279 P.3d 707 (2012).

### Analysis

With regard to the imposition of lifetime electronic monitoring, it is well settled that the imposition of parole conditions, including lifetime electronic monitoring, is vested with the parole board and outside the jurisdiction of the district court. See *State v. Hyche*, 293 Kan. 602, Syl. ¶ 2, 265 P.3d 1172 (2011), *State v. Naputi*, 293 Kan. 55, 67, 260 P.3d 86 (2011); *State v. Jolly*, 291 Kan. 842, 848, 249 P.3d 421 (2011).

It is equally well settled that where the sentence announced from the bench differs from the sentence later described in the journal entry, the orally pronounced sentence controls. See *State v. Waggoner*, 297 Kan. 94, 99-100, 298 P.3d 333 (2013); *Abasolo v. State*, 284 Kan. 299, 304, 160 P.3d 471 (2007); *State v. Branning*, 271 Kan. 877, 887, 26 P.3d 673 (2001); *State v. Hegwood*, 256 Kan. 901, 906, 888 P.2d 856 (1995). Accordingly, the journal entry reciting a lifetime postrelease supervision was erroneous.

Both parties agree that these two sentencing errors require correction. We vacate the erroneous portions of the sentences and remand to the district court to vacate the references to lifetime electronic monitoring and lifetime postrelease supervision. See *State v. Antrim*, 294 Kan. 632, 636-37, 279 P.3d 110 (2012).

Convictions affirmed, sentences affirmed in part and vacated in part, and case remanded with directions.