NOT DESIGNATED FOR PUBLICATION

No. 127,962

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RYAN WILLIAM LUNSFORD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID KAUFMAN, judge. Submitted without oral argument. Opinion filed April 10, 2026. Sentence vacated in part and case remanded with directions.

*Jacob Nowak*, of Kansas Appellate Defender Office, for appellant.

*Kristi D. Allen*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., MALONE and HILL, JJ.

HILL, J.:  This is an appeal of a district court order setting a term of lifetime postrelease supervision for Ryan William Lunsford, convicted of one count of indecent liberties with a child. Lunsford argues that because he did not orally or in writing waive a jury determination of his age, the district court impermissibly engaged in factfinding when it determined that his age was greater than 18 when he committed this crime, a determination made contrary to the legal doctrine established in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Thus, Lunsford contends

1

that his term of postrelease supervision should be 60 months instead of the remainder of his life. Case precedent compels us to agree with Lunsford.

*A guilty plea leads to a conviction and imposing a sentence.*

Lunsford agreed to plead guilty to one count of indecent liberties with a child. Indeed, there is evidence in this record that shows Lunsford was older than 18 when he committed this crime. Two documents signed by Lunsford that were offered to the district court before he entered his guilty plea—defendant's acknowledgment of rights and a plea agreement—both refer to Lunsford's age. In the acknowledgment, Lunsford indicated that he was 24 years old but, in the State's complaint and in the presentence investigation report, Lunsford's age is listed as 34. The record is unclear why the acknowledgment misstates his age. Even with the error, Lunsford was older than 18.

Section 7 of the acknowledgment of rights lists 12 rights that Lunsford understood he was giving up by entering a plea of guilty. These included such trial rights as "[t]he right to a speedy trial before a judge or jury" and "[t]he right to require the State of Kansas to prove, beyond a reasonable doubt, all of the charges against me before I could be found guilty." The acknowledgment also has a handwritten alteration to the postrelease term box indicating that Lunsford faced lifetime postrelease supervision, not 60 months' supervision.

In the plea agreement attached to Lunsford's acknowledgment, the State agreed to recommend the presumptive prison sentence with Lunsford free to argue for any lawful departure and/or border box findings. Furthermore, the plea agreement states that Lunsford acknowledged "being 18 years of age or older at the time of the offense."

2

*The plea hearing and colloquy cover the same subjects.*

At Lunsford's plea hearing, the district court affirmed that Lunsford faced a maximum term of lifetime postrelease. The court also reiterated that Lunsford was giving up his right to a jury trial. The State proffered the complaint and probable cause affidavit as its factual basis for the plea without objection from Lunsford. The complaint mentioned the age of the victim as "at least 14 years of age, but less than 16 years of age," and the affidavit mentioned Lunsford's age as 34.

Lunsford then agreed that he intended to plead guilty to those facts as alleged by the State. The district court found that the affidavit contained sufficient facts to adjudge Lunsford guilty based on his plea.

The district court then heard arguments from each party regarding a recommended disposition. The State asked for the presumptive prison sentence, while Lunsford requested that the court make border box findings that would allow the court to impose probation. We take that to mean that, if the court placed him on probation and did not send him to prison, such a disposition would not be a departure sentence because his sentence was in a border box. The district court declined to make border box findings and imposed a 31-month prison sentence.

Turning to the postrelease supervision portion of his sentence, the district court noted that it "struggle[d]" with imposing the mandatory lifetime postrelease term. It opined that, because of a "zealot legislature," district courts faced the choice of making border box findings for probation or ordering prison, at which time a defendant has "paid his debt to society and now he has the remaining [postrelease] sentence, which is his natural life, hanging over his head."

3

Despite this struggle, the district court stated it had "no problem with the sentence of 31 months," but had "no control over the post-release." Although the court noted that there could "be no appeal on it" and that Lunsford would not "get any relief from that," the court still wanted to make its opinion on the postrelease supervision term known before finalizing Lunsford's sentence. Lunsford appeals the postrelease supervision order.

*Was this issue preserved for appeal?*

Lunsford acknowledges that he did not preserve this issue of judicial factfinding for appeal. We generally do not consider issues raised for the first time on appeal. *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021). But Lunsford has properly noted that we have discretion to consider an issue raised for the first time on appeal when:

> "'(1) The newly asserted claim involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights; or (3) the district court is right for the wrong reason.'" *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015).

Lunsford argues that both the legal question exception and the fundamental right exception apply to his case.

The State comes to this argument rather late in the day. In its response to Lunsford's Rule 6.09 letter, the State argues that recent opinions from this court discourage this court's consideration of the merits of Lunsford's argument given his failure to preserve the issue. The State failed to make this preservation argument in its appeal brief. See *State v. Arnett*, 307 Kan. 648, 652, 413 P.3d 787 (2018) ("'Rule 6.09(b) letters are reserved for citing significant relevant authorities not previously cited which come to a party's attention after briefing. . . . [A]n appellate court will not consider new issues raised for the first time in a party's Rule 6.09(b) letter.'").

We acknowledge that some panels of this court have recently rejected exercising discretionary authority to consider similarly unpreserved claims. See, e.g., *State v. Jelinek*, 66 Kan. App. 2d 158, 164, 577 P.3d 662 (2025) ("[A]llowing any party to raise new issues on appeal with no explanation for their failure to do so before the trial court or their failure to establish the lack of any other available remedy will allow the exceptions to overcome the rule."), *petition for rev. filed* October 8, 2025.

But other panels of this court have routinely considered unpreserved *Apprendi* challenges to lifetime postrelease supervision arising from a plea agreement. See, e.g., *State v. Contreras*, 66 Kan. App. 2d 182, 185, 579 P.3d 1278 (2025), *rev. granted* 321 Kan. 791 (2026); *State v. Conkling*, 63 Kan. App. 2d 841, 843, 540 P.3d 414 (2023); *State v. Kewish*, No. 121,793, 2021 WL 4352531, at *2 (Kan. App. 2021) (unpublished opinion); *State v. Schmeal*, No. 121,221, 2020 WL 3885631, at *8 (Kan. App. 2020) (unpublished opinion).

We also consider it important here that one of the main cases Lunsford relies on for relief, *State v. Nunez*, 319 Kan. 351, 354, 554 P.3d 656 (2024), was decided after Lunsford's sentencing and while this appeal was pending. This fact weighs in favor of our court addressing Lunsford's sentencing claim for the first time on appeal. Lunsford could not have relied on the ruling in *Nunez* to support his claim in district court when *Nunez* had not been decided at the time Lunsford was sentenced. Significantly, *Nunez* is an example of a case where the Kansas Supreme Court chose to address an *Apprendi* issue raised for the first time on appeal.

As we will discuss herein, our Supreme Court's holding in *Nunez* has a significant impact on the merits of Lunsford's sentencing claim involving lifetime postrelease supervision. Before our Supreme Court's ruling in *Nunez*, the Court of Appeals routinely addressed *Apprendi* claims for the first time on appeal because the issue involved purely a legal question arising on proved or admitted facts and because consideration of the

theory was necessary to prevent the denial of fundamental rights. See, e.g., *Conkling*, 63 Kan. App. 2d at 843; *State v. Entsminger*, No. 124,800, 2023 WL 2467058, at *6-8 (Kan. App. 2023) (unpublished opinion); *State v. Walker*, No. 125,554, 2023 WL 7983816, at *3-5 (Kan. App. 2023) (unpublished opinion); *State v. Reinert*, No. 123,341, 2022 WL 1051976, at *3 (Kan. App. 2022) (unpublished opinion); *Kewish*, 2021 WL 4352531, at *2-4; *State v. Haynes*, No. 120,533, 2020 WL 741458, at *2-3 (Kan. App. 2020) (unpublished opinion); *Schmeal*, 2020 WL 3885631, at *8-9; *State v. Zapata*, No. 120,529, 2020 WL 741486, at *8-9 (Kan. App. 2020) (unpublished opinion); *State v. Cook*, No. 119,715, 2019 WL 3756188, at *1-3 (Kan. App. 2019) (unpublished opinion).

It was only *after* our Supreme Court's ruling in *Nunez* that many panels of this court have now decided it is more prudent to decline to reach the issue for the first time on appeal. See, e.g., *State v. Jelinek*, 66 Kan. App. 2d at 162-64, and other cases cited in the dissent. Slip op. at 16-17 (Warner, C.J., dissenting). Only recently did this court begin to find that "*Apprendi* claims related to sentence enhancements have been widely litigated in Kansas," so it is no longer necessary to reach the issue for the first time on appeal. *Jelinek*, 66 Kan. App. 2d at 164.

This dispute is not trivial. We are an error correcting court and must consider the importance of the subject matter at the heart of this issue. Will we follow the United States Supreme Court's *Apprendi* ruling on judicial factfinding or brush it aside and hold the preservation rule is more important and ignore the error that is so apparent in this case? We choose to follow the United States Supreme Court. Given that this court has regularly exercised its discretion to consider similar appeals and that the State failed to raise its preservation argument in its brief on appeal, we will exercise our discretion and consider the merits of Lunsford's claim. We find that, to prevent the denial of a fundamental right under the test found in *Godfrey*, we must proceed.

*What was not said is important.*

Neither of the two documents signed by Lunsford advise him of his right for a jury finding of his age, nor do they contain his waiver of that right to a jury finding on his age. We find nothing in the record showing that the district court told him of this right to have a jury determine his age, nor do we find anything in the record of the plea colloquy that suggests he orally waived this right to the court.

Whether Lunsford was older than 18 at the time of the commission of his crime is legally significant and is, in fact, determinative of any postrelease supervision term that the district court would impose in case he was found guilty.

The sentencing law, K.S.A. 22-3717(d)(1)(G), is the basis for our analysis:

> "(G)(i) Except as provided in subsection (u), persons sentenced to imprisonment for a sexually violent crime committed on or after July 1, 2006, when the offender was 18 years of age or older, and who are released from prison, shall be released to a mandatory period of postrelease supervision for the duration of the person's natural life.
>
> (ii) Persons sentenced to imprisonment for a sexually violent crime committed on or after the effective date of this act, when the offender was under 18 years of age, and who are released from prison, shall be released to a mandatory period of postrelease supervision for 60 months."

The 60-month postrelease supervision period for minors is essentially a default term under the statute—it is the minimum term of supervision. This means for a district court to impose lifetime postrelease supervision—the greater term—it must first make a factual determination that the defendant was 18 years or older when the defendant committed the crime. That fact—Lunsford's age when he committed this crime—determines the outcome. It is at this point that another legal doctrine becomes operative.

7

*A United States Supreme Court ruling is at the heart of this controversy.*

Under *Apprendi*, 530 U.S. at 490: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The "'statutory maximum'" is the maximum sentence a district court may impose based only on the facts in a jury's verdict or admitted by the defendant. *Blakely v. Washington*, 542 U.S. 296, 303, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

Thus, Lunsford's age at the time he committed this offense is the fact that must be proved to a jury under *Apprendi* because it is a fact that enhances the penalty that can be imposed if he is found guilty.

But a defendant's rights under *Apprendi* may be waived. In *United States v. Booker*, 543 U.S. 220, 244, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), the United States Supreme Court reaffirmed that a district court may use a fact admitted by a defendant under a plea agreement to support a sentence greater than the statutory maximum. Similarly, the State may seek a sentencing enhancement so long as a defendant "consents to judicial factfinding." *Blakely*, 542 U.S. at 310.

Whether a district court violates the constitutional rights of a defendant under *Apprendi* presents us with a question of law subject to unlimited review by this court. *State v. Huey*, 306 Kan. 1005, 1009, 399 P.3d 211 (2017).

In our search of this record, we have found no waiver by Lunsford of his right to a jury determination of his age when this crime was committed.

*The parties take opposing views on how we should proceed.*

The State argues that we should follow the path taken by the *Duckworth* panel and perform the harmless error test from *State v. Bentley*, 317 Kan. 222, 526 P.3d 1060 (2023). See *State v. Duckworth*, No. 126,677, 2024 WL 4579265, at *4-6 (Kan. App. 2024) (unpublished opinion), *rev. denied* 320 Kan. 864 (2025). In *Bentley*, the district court failed to obtain a proper jury waiver for a defendant who stipulated to an element of his crime. Our Supreme Court found that this error was analogous to failing to submit an element of a charged crime to the jury and, because it was not a structural error, it was subject to the constitutional harmless error test from *Neder v. United States*, 527 U.S. 1, 17, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999). *Bentley*, 317 Kan. at 233-34.

The *Bentley* court further narrowed the test by framing the issue as whether there was a reasonable possibility that the failure to inform the defendant of his right to a jury trial on those facts led to his stipulation. 317 Kan. at 234. This determination hinged on two components: (1) Was the disputed element "easily provable"? and (2) Did the defendant mean to defend his case on the disputed element? 317 Kan. at 235.

Offering a much different view, Lunsford points us to the ruling in *State v. Obregon*, 309 Kan. 1267, 444 P.3d 331 (2019). In that case, the defendant had pleaded no contest to the base drug offense, but the plea agreement did not include any facts that would support a firearm sentence enhancement advanced by the State. Another panel of our court had "vacated the enhancement and remanded to the district court either for Obregon to properly waive his jury trial right or for a jury to make the factual findings required . . . ." 309 Kan. at 1269; *State v. Obregon*, No. 117,422, 2018 WL 911215, at *3 (Kan. App. 2018) (unpublished opinion).

The *Obregon* court considered whether the panel of our court erred by remanding the case for either a valid jury trial waiver by the defendant or a special jury verdict to

9

determine whether the enhancement applied. 309 Kan. at 1276. The court ultimately found that Kansas case law generally prohibits special jury verdicts and there was no statutory exception for special verdicts to a firearm enhancement after a defendant was convicted. 309 Kan. at 1277-78. Therefore, the court ordered the sentence vacated and remanded the case for resentencing without the enhancement. 309 Kan. at 1278.

*Some Kansas decisions guide us.*

Our review of the Kansas cases that help make this decision begins with *Nunez*. In *Nunez*, the Kansas Supreme Court considered an unpreserved challenge to the imposition of lifetime postrelease supervision after a jury trial. The defendant challenged the district court's failure to submit the question of his age to the jury before sentencing him to lifetime postrelease supervision on his rape conviction. On appeal, the defendant specifically argued that the district court had violated *Apprendi* by using his age, a fact not found by the jury, to enhance his sentence to the more severe lifetime postrelease term. 319 Kan. at 352.

The *Nunez* court determined that a district court may only rely on a defendant's admission on a fact that would increase the sentence if a "knowing and voluntary waiver of the defendant's jury trial right" preceded the admission. 319 Kan. at 354. It found: "Nunez did not enter any plea agreement, he did not waive his jury trial rights, and he did not stipulate or state his age in open court." 319 Kan. at 355. The court therefore held that when a district court engages in "judicial fact-finding (that is, facts found by a judge rather than a jury)" on an admission from the defendant that occurred without a proper waiver of his jury trial rights, the district court "run[s] afoul of *Apprendi*." 319 Kan. at 353-54.

10

The *Nunez* ruling is clear:  In the absence of a knowing and voluntary waiver of a jury determination of an offender's age or a plea agreement that contains such a knowing waiver, a district court's finding of that age violates *Apprendi.*

Since the ruling in *Nunez*, several panels of this court have considered the issue of lifetime postrelease supervision under *Apprendi* in the context of a plea agreement. There has not been a uniform approach for applying the *Nunez* holding.

For example, in *Contreras*, 66 Kan. App. 2d at 189, a panel of this court held that a district court

> "should obtain a jury finding that the defendant was at least 18 years old when they committed the crime or, in the case of a plea, it should obtain a knowing and voluntary jury trial waiver *that includes informing the defendant they are waiving the right to a jury finding on their age*." (Emphasis added.)

It also held that a district court "should ask the defendant to admit or agree to the elements of the crime and the fact they were at least 18 years old when the crime was committed." 66 Kan. App. 2d at 189.

The *Contreras* panel then decided that the district court had violated *Apprendi*. 66 Kan. App. 2d at 190. First, the panel noted that the defendant's acknowledgment of his age in his plea agreement preceded his jury trial waiver at his plea hearing. Next, the panel found that, even if the jury trial waiver had occurred before the defendant's admissions of his age, the waiver was insufficient because it did not inform the defendant that he was waiving his jury trial right specifically on the issue of his age. 66 Kan. App. 2d at 190.

11

On the other hand, in *Duckworth*, 2024 WL 4579265, another panel of this court took a different path. The panel's application of the test in *Bentley* found that the use of the defendant's age without a valid jury trial waiver was analogous to an ineffective stipulation to an element and the error had not induced the defendant to accept his plea. *Duckworth*, 2024 WL 4579265, at *5-6; see *Bentley*, 317 Kan. at 233-34. Duckworth did not dispute his age, nor did the record suggest that he would not have accepted his plea had he known of his right to a jury trial on the issue of his age; thus, the panel was "firmly convince[d]" that the error to obtain a valid jury trial waiver from Duckworth did not affect his decision to enter a plea. 2024 WL 4579265, at *5-6. Ultimately, the *Duckworth* panel did not resolve whether the district court engaged in impermissible judicial factfinding and, instead, found that any potential error was harmless. 2024 WL 4579265, at *6.

*But another case not mentioned by the parties influences us.*

The Kansas Supreme Court's holding in *State v. Duncan*, 291 Kan. 467, 471-73, 243 P.3d 338 (2010), *overruled on other grounds by State v. Johnson*, 317 Kan. 458, 531 P.3d 1208 (2023), guides our ruling. Duncan had pled guilty to aggravated battery, which carried a maximum presumptive prison sentence of 34 months. In exchange for a downward departure to probation, Duncan agreed to an underlying upward departure sentence of 48 months in prison. In other words, he agreed to a longer prison sentence in exchange for his release on probation.

But his release did not last long. After Duncan's probation was revoked, he was ordered to serve his longer prison sentence. He appealed, contending that the State failed to obtain an explicit waiver of his right to have a jury determine whether there were any aggravating factors that supported a departure sentence, and this procedure violated his rights under *Apprendi*. Another panel of our court found no error by the trial court. *State*

12

*v. Duncan*, No. 99,463, 2009 WL 398985, at *1 (Kan. App. 2009) (unpublished opinion). Duncan then petitioned for review by the Kansas Supreme Court.

In its review, our Supreme Court first acknowledged that Duncan could have waived his right to a jury, which would have rendered the upward departure constitutional under *Blakely*. *Duncan*, 291 Kan. at 471-72; see *Blakely*, 542 U.S. at 310. It then considered whether a proper waiver occurred by examining the language of Duncan's plea agreement.

The *Duncan* court determined the language of the agreement was, "at best, . . . ambiguous as to whether the defendant was waiving both the jury determination of guilt and the jury determination of aggravating factors." 291 Kan. at 473. It added that the district court had *not* informed Duncan at his plea hearing of his jury trial right to determine the existence of aggravating factors. 291 Kan. at 472-73. Thus, the court held that the plea agreement language did not constitute a valid waiver that would have allowed the district court to impose an upward departure. 291 Kan. at 473.

*Our ruling is shaped by a different standard.*

This *Duncan* holding created a heightened standard in Kansas: A district court may only rely on a fact admitted by a defendant if a specific jury trial waiver on the issue of that fact accompanied the admission. The *Nunez* court adopted similar language when it expressed: "If the jury trial right was not properly waived with respect to any defense admission, that admission may not be considered by a sentencing court without running afoul of *Apprendi*." *Nunez*, 319 Kan. at 354.

After all, ours is a search for a *knowing* waiver. The holding from *Duncan* is the applicable standard for this appeal. Lunsford's plea agreement did not waive his jury trial right to determine his age, nor did the district court advise Lunsford that he had the right

13

to a jury trial on the issue of his age. Even so, the district court still used Lunsford's age as an aggravating factor to impose lifetime postrelease supervision instead of the lesser 60-month term. Thus, under the precedent set by *Duncan*, the district court's use of Lunsford's age to impose lifetime postrelease supervision violated his *Apprendi* rights.

Moving on to the appropriate test to determine whether such error was harmless, we follow the path set out in *Obregon*. Whether Lunsford was over 18 years of age at the time he committed his crimes operates as the relevant fact that dictates whether the district court could enhance his sentence from a 60-month postrelease period to a lifetime term. Similarly, the issue of Lunsford's age cannot be remanded for consideration by a jury. See 309 Kan. at 1278.

Our application of *Obregon* principles is consistent with the court's remedy in *Duncan*, where the court found that prior precedent prevented a district court from empaneling a jury solely to consider an upward departure. 291 Kan. at 473; see K.S.A. 21-4718(b)(4) (Torrence 2007) (now K.S.A. 21-6817[b][4]); *State v. Horn*, 291 Kan. 1, 11-12, 238 P.3d 238 (2010). The *Duncan* court ordered that Duncan's sentence be vacated and remanded to the district court to impose a sentence without the upward durational departure applied. 291 Kan. at 473.

Additionally, we must reject the State's invitation to use harmless error as a basis for our ruling. Simply put, we cannot find what happened here to be harmless because there is nothing in this record that shows that Lunsford was ever advised of his right to a jury determination of his age at the time when the crime was committed. With no such information, we cannot reasonably conclude that he made an informed waiver.

To avoid the problem of judicial factfinding barred by *Apprendi*, we do not scour a record for any trace of evidence to show us the age of the offender. Instead, we look to see if offenders have been advised of their rights to a jury determination of their age at

the time of the crime's commission. If they are so advised, we then look to see if there is a waiver of that right.

We simply find no evidence of a knowing waiver by Lunsford of his right for a jury determination of his age. Neither of the documents he signed contain such a waiver. We see nothing in the record that he was orally informed of this right. And we find nothing in the record that suggests he orally waived this right.

Because the district court, in violation of *Apprendi*, impermissibly decided Lunsford's age and then sentenced him to lifetime postrelease supervision, it committed a reversible error with no remedy. Using the *Obregon* framework, we vacate the lifetime postrelease supervision component of Lunsford's sentence and remand for resentencing to 60 months' postrelease supervision.

Sentence vacated in part and case remanded with directions.

* * *

WARNER, C.J., dissenting: For anyone outside an appellate court, the questions presented in this case would seem startlingly simple: Should a defendant who has admitted multiple times that he is 34 years old—including during his plea hearing—serve the period of postrelease supervision mandated for adults? And must an appellate court vacate that postrelease-supervision period when that same defendant claims for the first time on appeal that the State failed to prove his age, despite his previous acknowledgments?

Yet these seemingly simple issues have led to splintered decisions by our court.

Some panels' decisions have concluded, as the majority opinion does here, that the Kansas Supreme Court's decision in *State v. Nunez*, 319 Kan. 351, 554 P.3d 656 (2024),

15

requires appellate courts to suspend reason in favor of legal formalism. See slip op. at 10-11. The decisions have found that the absence of a specific waiver regarding the defendant's age at the plea hearing requires reviewing courts to vacate the postrelease-supervision period for adults and impose the period reserved for minors, even if other information in the record removes any doubt that the defendant is over the age of 18. See *State v. Contreras*, 66 Kan. App. 2d 182, 186-92, 579 P.3d 1278 (2025), *rev. granted* 321 Kan. 791 (2026); *State v. Pelham*, No. 127,803, 2026 WL 482634, at *1 (Kan. App. 2026) (unpublished opinion).

Other decisions have concluded that even if some question remained as to whether a person entering into a plea stipulated to their age—resulting in a technical error under *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)—that error was harmless in light of the record as a whole. See *State v. Sanders*, 65 Kan. App. 2d 236, 253, 563 P.3d 234, *rev. denied* 320 Kan. 867 (2025); *State v. Hane*, No. 127,644, 2026 WL 849475, at *8 (Kan. App. 2026) (unpublished opinion); *State v. Scott*, No. 127,349, 2026 WL 631237, at *11 (Kan. App. 2026) (unpublished opinion), *petition for rev. filed* March 24, 2026; *State v. Lucas*, No. 127,689, 2025 WL 3687175, at *3-4 (Kan. App. 2025) (unpublished opinion) (Cline, J., concurring), *petition for rev. filed* January 20, 2026; *State v. Duckworth*, No. 126,677, 2024 WL 4579265, at *6 (Kan. App. 2024) (unpublished opinion), *rev. denied* 320 Kan. 864 (2025). These decisions apply one of two harmlessness tests—concluding either that the record shows the lack of a jury-trial waiver of the defendant's age did not affect the defendant's decision to enter a plea (see *State v. Bentley*, 317 Kan. 222, 230, 526 P.3d 1060 [2023]), or that the lack of a specific waiver of the defendant's age did not affect the outcome of the trial (see *State v. Brown*, 298 Kan. 1040, 1049, 318 P.3d 1005 [2014]).

Still other decisions have declined to reach this question at all when it was not first raised at a plea hearing or at sentencing. See *Contreras*, 66 Kan. App. 2d at 193-95 (Warner, C.J., dissenting); *State v. Jelinek*, 66 Kan. App. 2d 158, 162-64, 577 P.3d 662

(2025), *petition for rev. filed* October 8, 2025; *Pelham*, 2026 WL 482634, at *5-6 (Bruns, J., dissenting); *State v. Cole*, No. 128,747, 2026 WL 252920, at *2 (Kan. App. 2026) (unpublished opinion), *petition for rev. filed* February 4, 2026; *Lucas*, 2025 WL 3687175, at *1; *State v. Torrence*, No. 128,015, 2025 WL 3048984, at *1 (Kan. App. 2025) (unpublished opinion), *petition for rev. filed* December 1, 2025; *State v. Wicks*, No. 127,785, 2025 WL 2682411, at *1 (Kan. App. 2025) (unpublished opinion), *petition for rev. filed* October 20, 2025; *State v. Skidmore*, No. 127,668, 2025 WL 2682404, at *2-3 (Kan. App. 2025) (unpublished opinion), *petition for rev. filed* October 17, 2025; *State v. Suggs*, No. 127,570, 2025 WL 2682183, at *1 (Kan. App. 2025) (unpublished opinion), *petition for rev. filed* October 20, 2025; *State v. King*, No. 127,569, 2025 WL 2682451, at *1 (Kan. App. 2025) (unpublished opinion), *petition for rev. filed* October 20, 2025; *State v. Bednarz*, No. 126,821, 2025 WL 2265714, at *1 (Kan. App. 2025) (unpublished opinion), *petition for rev. filed* September 5, 2025. In my view, this last group of decisions treks the most prudent course and the course I would follow here.

The majority opinion notes that some panels of our court have chosen to consider *Apprendi* challenges to a defendant's age that were raised for the first time on appeal (and thus without a previous record) and finds that the importance of the United States Supreme Court precedent on this issue warrants following a similar course. See slip op. at 5-6. I disagree.

Appellate courts are primarily courts of review. We *review* district courts' rulings; we generally do not render decisions on new arguments raised for the first time on appeal. As the majority opinion here notes, Kansas courts have recognized "limited exceptions" to this preservation rule that are "largely motivated by procedural fairness and judicial economy." *State v. Bliss*, 61 Kan. App. 2d 76, 92, 498 P.3d 1220 (2021), *rev. denied* 314 Kan. 856 (2022). These exceptions recognize that an appellate court has discretion to consider some otherwise unpreserved issues when the issue at hand "involves a purely legal question, requiring no factual development, that fully resolves

17

that case." 61 Kan. App. 2d at 92. Or a court may "choose to consider a new argument, given a sufficient factual record, if it is necessary to protect a person's fundamental rights." 61 Kan. App. 2d at 92-93.

But while we may in some instances consider issues that were not presented to the district court, we must be careful not to allow the prudential exceptions that could warrant considering a claim in the first instance to upend our role in the judicial system. In particular, the Kansas Supreme Court has found that appellate courts abuse their discretion when they consider unpreserved issues without a meaningful assessment of whether the "theories were amenable to resolution on the merits given the existing record." *State v. Unruh*, 320 Kan. 260, 265, 565 P.3d 825 (2025). Accord *Schutt v. Foster*, 320 Kan. 852, 859, 572 P.3d 770 (2025) (declining in a different context to review an unpreserved question and noting that the preservation requirement "ensures that the parties fully develop the basis for appellate review" and "promotes fairness").

*Apprendi* challenges ultimately call for a legal conclusion, but the analysis under *Apprendi* is not "a pure legal question." See *Unruh*, 320 Kan. at 266. These challenges require appellate courts to determine whether a fact that elevates a criminal sentence was found by a jury beyond a reasonable doubt or waived through a plea. In the absence of that jury finding or jury-trial waiver, we must assess whether the omitted fact was uncontested and "supported by overwhelming evidence." *Nunez*, 319 Kan. at 356; see *Brown*, 298 Kan. at 1049. This includes an assessment of whether the "trial record contains [any] evidence from which a jury [or court at the plea hearing] could reasonably have drawn an inference that [the defendant] was 18 years of age or older at the time of the crime." *Nunez*, 319 Kan. at 356.

In raising this claim for the first time on appeal, Lunsford has circumvented the district court's consideration of this question and prevented the parties from developing or clarifying a record regarding Lunsford's age. To borrow from a previous explanation:

18

"The rule in *Apprendi* is now 25 years old and well-enshrined in the legal landscape. The fact that the Kansas Supreme Court altered the harmlessness analysis under *Apprendi* for the appropriate length of postrelease supervision periods in [*Nunez*] does not change the fact that defendants have been long aware of the need to alert a district court to a perceived *Apprendi* violation to ensure review of that issue on appeal.

". . . Reaching [Lunsford's] claim for the first time on appeal is unfair to the sentencing court and to the State. It effectively allows [Lunsford] to waive his right to a jury trial on the charged offenses and obtain a favorable plea, stand silent at sentencing and prevent any opportunity for the district court to inquire whether there was a stipulation as to [Lunsford's] age or otherwise address the issue, and then challenge the resulting term of postrelease supervision on appeal—without allowing any opportunity for a record to be made from which we could determine whether that error was reversible." *Contreras*, 66 Kan. App. 2d at 194 (Warner, C.J., dissenting).

This is especially problematic in the case of a plea, where a person has waived all the defenses that could have been brought at trial. The circumstances in Lunsford's case illustrate this point. During the plea hearing, the district court informed Lunsford that he was waiving all defenses and waiving the requirement that the State present evidence to prove its case. The court also explained what the anticipated prison sentence would be for Lunsford's offense, followed by "lifetime" postrelease supervision. Lunsford personally stated that he had no questions about these considerations and nevertheless wished to proceed with the plea. Following this discussion, Lunsford indicated that he had no objection to using the probable-cause affidavit to establish the factual basis for his plea. That affidavit stated that Lunsford was a "34 year old white male born in 1989."

The majority opinion concludes that, despite this information, there was "no evidence" that Lunsford knowingly waived his right to a jury trial on the issue of his age. Slip op. at 15. I am unsure whether I agree with that assessment. Yet one thing remains clear: If this issue had been raised before the district court, the appellate court would not be left to grapple in the dark for evidence of a discussion that never took place.

19

The majority opinion also observes that appellate courts before *Nunez* were more inclined to consider *Apprendi* challenges to a defendant's age that were raised for the first time on appeal. That is likely true. I cannot speak for my colleagues who have exhibited similar reticence to reviewing unpreserved issues under the current framework. But I am more willing to consider an otherwise unpreserved issue if the resulting analysis allows a court to conduct a holistic review of the evidence presented to assess whether an error occurred and gauge the effect of that error on the outcome of the case.

Before *Nunez*, appellate courts routinely engaged in this comprehensive review to determine whether the record revealed any doubt whether the defendant was 18 years old or older when they committed the offense. See *State v. Conkling*, 63 Kan. App. 2d 841, 843, 540 P.3d 414 (2023), *rev. denied* 318 Kan. 1087 (2024); *State v. Haynes*, No. 120,533, 2020 WL 741458, at *2-3 (Kan. App.) (unpublished opinion), *rev. denied* 312 Kan. 896 (2020); *State v. Schmeal*, No. 121,221, 2020 WL 3885631, at *8-9 (Kan. App.) (unpublished opinion), *rev. denied* 312 Kan. 900 (2020); *State v. Zapata*, No. 120,529, 2020 WL 741486, at *8-9 (Kan. App.) (unpublished opinion), *rev. denied* 312 Kan. 901 (2020). But some decisions of our court—including the majority opinion here—have interpreted language in *Nunez* to significantly narrow the window of information that may be considered. The result is that the district court and the parties may have one understanding of the facts—an understanding that is discernable from the record—but the appellate courts feel constrained to reach a different conclusion on appeal because the universe of information that we may evaluate has contracted. See *Contreras*, 66 Kan. App. 2d at 192 (noting the "pragmatic" argument for a broader review but observing that "commonsense arguments do not always carry the day when it comes to applying the rule in *Apprendi*").

I am unconvinced that the Kansas Supreme Court's decision in *Nunez*, which involved an appeal from a sentence imposed after a jury trial, intended to draw artificial lines about what information appellate courts can consider in assessing whether a

20

defendant who has entered a plea was 18 years old or older when they committed an offense. But to the extent such a line exists, our caselaw should not allow a party to remain silent in earlier proceedings—and thus prevent the development of a record to review—and then rely on that same absence of a record to claim reversible error on appeal.

I would decline to consider Lunsford's unpreserved challenge to his postrelease-supervision term for the first time on appeal. Thus, I respectfully dissent.